State Employees Bargaining Agent Coalition v. Rowland

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2006

(Argued: November 8, 2006                       Decided: July 10, 2007)

Docket No. 06-0616-cv

STATE EMPLOYEES BARGAINING AGENT COALITION, individually, and on behalf of all its members, AMERICAN FEDERATION OF SCHOOL ADMINISTRATION, LOCAL 61, AFL-CIO, CONNECTICUT ASSOCIATION OF PROSECUTORS, PROTECTIVE SERVICE COALITION, IAFF, AFL-CIO, JUDICIAL MARSHALS, INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS, NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, AFL-CIO, CONNECTICUT STATE POLICE UNION, CONGRESS OF CONNECTICUT COMMUNITY COLLEGES, SEIU, AFL-CIO, CONNECTICUT STATE UNIVERSITY AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, UNIV. OF CT, AMERICAN ASSN. OF UNIV. PROF., CT EMP. UNION INDEPENDENT, SEIU, AFL-CIO, CT FEDERATION OF ED. & PROF. EMP. AFT, AFL-CIO, DISTRICT 1199, CT NEW ENGLAND HEALTH CARE EMPLOYEES UNION, SEIU, AFL-CIO, COUNCIL 4, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMP., AFL-CIO, DENISE A. BOUFFARD, GENEVA M. HEDGECOCK, DENNIS P. HEFFERMAN, WILLIAM D. HILL, and MARCELLE Y. PICHANICK,

        *Plaintiffs-Appellees*,

        v.

JOHN G. ROWLAND, I/O as Governor of the State of Connecticut, and MARC S. RYAN, I/O as Sec. of Ofc. of Policy & Mgmt. of State of CT,

        *Defendants-Appellants*.

Before: FEINBERG, LEVAL, and CABRANES, *Circuit Judges*.

Interlocutory appeal from an order of the United States District Court for the District of Connecticut (Alfred V. Covello, *Judge*) denying defendants' motion to dismiss plaintiffs' amended complaint pursuant to the doctrines of absolute legislative immunity and Eleventh Amendment sovereign immunity. The District Court concluded that (1) sovereign immunity barred all of plaintiffs' claims for money damages brought against defendant state officials in their personal capacities; (2) sovereign immunity did not bar plaintiffs' claims for injunctive relief brought against these defendants

in their official capacities; and (3) further discovery was required to determine whether legislative immunity would bar all of plaintiffs' claims. Defendants appeal the District Court's order insofar as it held that plaintiffs' claims for reinstatement and other forms of injunctive relief were not barred under the doctrines of legislative immunity and Eleventh Amendment sovereign immunity.

We dismiss the appeal for lack of jurisdiction insofar as it challenges the District Court's denial of legislative immunity to defendant state officials with respect to plaintiffs' claims seeking reinstatement to their previous positions; we affirm the District Court's decision insofar as it denied legislative immunity with respect to plaintiffs' claims seeking placement into *other*, existing positions, and insofar as it held that plaintiffs' claims for injunctive relief were not barred by the Eleventh Amendment.

ALLAN B. TAYLOR (Albert Zakarian, Victoria Woodin Chavey, and Douglas W. Bartinik, *on the brief*), Day Berry & Howard LLP, Hartford, CT, *for Defendants-Appellants*.

DAVID S. GOLUB (Jonathan M. Levine and Craig N. Yankwitt, *on the brief*), Silver Golub & Teitell LLP, Stamford, CT, *for Plaintiffs-Appellees*.

JOSÉ A. CABRANES, *Circuit Judge*:

The question presented in this interlocutory appeal is whether absolute legislative immunity and Eleventh Amendment sovereign immunity should bar plaintiffs' claims arising from the allegedly unlawful termination of their state employment by executive branch officials of the State of Connecticut. In particular, we consider arguments by defendants John G. Rowland ("Rowland"), former Governor of the State of Connecticut, and Mark S. Ryan ("Ryan"), former Secretary of the Office of Policy & Management of the State of Connecticut ("OPM") (collectively, "defendants"), that the United States District Court for the District of Connecticut (Alfred V. Covello, *Judge*) erred when it denied defendants' motion seeking dismissal of plaintiffs' complaint under the doctrines of absolute

legislative immunity and Eleventh Amendment sovereign immunity.

State Employees Bargaining Agent Coalition ("SEBAC"), along with twelve of thirteen unions comprising SEBAC and five individually named union members, on behalf of a putative class of similarly-situated plaintiffs (jointly, "plaintiffs"), filed the instant action in January 2003 seeking damages against defendants in their personal capacities, and injunctive relief against defendants in their official capacities. They filed an amended complaint in May 2003. Plaintiffs' amended complaint alleged constitutional violations arising from the termination of approximately 3,000 unionized state employees beginning in November 2002, assertedly carried out by defendants in retaliation for the employees' political affiliations and union membership. Plaintiffs' claims for injunctive relief sought reinstatement to their previous positions, or to other positions in the state workforce, and an array of other forms of relief, including a prohibition against retaliating against plaintiffs.

Defendants moved to dismiss plaintiffs' amended complaint under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), arguing, *inter alia*, that plaintiffs' claims were barred on legislative immunity and Eleventh Amendment sovereign immunity grounds.[1] The District Court decided, in response to defendants' motion, that (1) sovereign immunity barred all of plaintiffs' claims for money damages; (2) further discovery was required to determine whether legislative immunity would bar plaintiffs' claims for injunctive relief; and (3) sovereign immunity did not bar plaintiffs' claims for injunctive relief. On appeal, defendants challenge the District Court's order insofar as it held that legislative immunity and sovereign immunity did not at this time bar plaintiffs' claims for injunctive relief.[2]

---

[1] Defendants also moved to dismiss plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. That motion was denied by the District Court in its entirety, *see State Employees Bargaining Agent Coalition v. Rowland*, Civ. No. 3:03CV221 (AVC), 2006 WL 141645, at *6 (D. Conn. Jan. 18, 2006) (hereinafter, "*Dist. Ct. Op.*"), and is not before us on the instant appeal.

[2] As plaintiffs note in their brief, although the District Court found that plaintiffs' claims for money damages were barred pursuant to Eleventh Amendment sovereign immunity, the District Court did not explicitly "dismiss" these claims, nor did it "grant" defendants' motion to the extent it sought dismissal of the claims. *See* Appellees' Br. at 51. Nevertheless, it is apparent from the District Court's order that defendants' motion was effectively granted insofar as it sought dismissal of plaintiffs' claims for money damages due to lack of subject matter jurisdiction under the Eleventh

3

We agree with the District Court that defendants are not entitled to legislative immunity at this stage in the litigation, although we do so on somewhat different grounds than those relied upon by the District Court. We hold, as a threshold matter, that legislative immunity may bar not only claims for damages, but also certain claims seeking injunctive relief against state officials in their official capacities. Nevertheless, we agree with the District Court's holding that discovery is necessary to assess whether legislative immunity may bar any of plaintiffs' claims for reinstatement to their previous positions. Defendants will be entitled to legislative immunity from these claims if the District Court properly concludes, after discovery, (1) that when committing the alleged violations, defendants were acting in their "legislative" capacities under the test set forth in *Bogan v. Scott-Harris*, 523 U.S. 44, 54-56 (1998); and (2) that granting the requested relief would enjoin defendants in their "perform[ance of] legislative functions," *id.* at 55.[3] We further conclude, as a matter of law, that defendants are not entitled to legislative immunity from plaintiffs' claims seeking placement into *other*, existing positions in the state workforce, because granting this relief would not enjoin defendants in their performance of legislative functions.

As to defendants' argument that sovereign immunity bars plaintiffs' claims for injunctive relief, we affirm the District Court's denial of defendants' motion to dismiss on that basis. In particular, we affirm the District Court's conclusion that the injunctive relief sought by plaintiffs falls within the exception to sovereign immunity set forth in *Ex parte Young*, 209 U.S. 123 (1908), notwithstanding defendants' arguments that plaintiffs allege no ongoing violation that can be remedied by an injunctive

---

Amendment. *See Dist. Ct. Op.*, 2006 WL 141645, at *5 (deeming such claims "barred by the Eleventh Amendment"). There is no final judgment from which plaintiffs can appeal this decision. *See Kamerling v. Massanari*, 295 F.3d 206, 212-13 (2d Cir. 2002). Accordingly, the only claims before us on this interlocutory appeal are those for injunctive relief brought against defendants in their official capacities.

[3] We recognize that defendants no longer occupy state office. Although we use the phrase "defendants" throughout this opinion when discussing plaintiffs' official-capacity claims for injunctive relief, we note that any relief that is ultimately granted by the District Court against defendants in their official capacities would apply not to Rowland and Ryan, but to the current Governor and Secretary of the Office of Policy Management of the State of Connecticut.

4

order of the District Court.

# I. BACKGROUND

## A. Factual Allegations

We set forth below the relevant facts as alleged in plaintiffs' amended complaint and as discussed by the District Court. Because the case comes to us after the denial of a motion to dismiss, we accept as true the facts as they are alleged in the amended complaint, as supplemented by undisputed facts that are matters of public record. *See Almonte v. City of Long Beach*, 478 F.3d 100, 104 & n.2 (2d Cir. 2007).[4]

In December 2002, defendants Rowland and Ryan announced the termination of the employment of approximately 3,000 unionized Connecticut state workers. As noted by the District

---

[4] The District Court viewed defendants' motion to dismiss on legislative immunity and sovereign immunity grounds as challenging only the District Court's subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), rather than as challenging the legal sufficiency of the amended complaint under Fed. R. Civ. P. 12(b)(6). *See Dist. Ct. Op.*, 2006 WL 141645, at *2. The distinction is significant: while we must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), *see, e.g., Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001), we have held that, in adjudicating a motion to dismiss for lack of subject-matter jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits. *See, e.g., Antares Aircraft, L.P. v. Fed. Rep. of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991). *But see Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) (holding that, when reviewing dismissal under Fed. R. Civ. P. 12(b)(6) *or* 12(b)(1), "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff").

It is well-settled that legislative immunity is not a jurisdictional bar, but is rather a personal defense that may be asserted to challenge the sufficiency of a complaint under Rule 12(b)(6). *See Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 71-72 (2d Cir. 1992) (reviewing denial of motion to dismiss on legislative immunity grounds under Fed. R. Civ. P. 12(b)(6)). Therefore, we conclude that the District Court improperly construed defendants' motion to dismiss plaintiffs' claims on legislative immunity grounds under Rule 12(b)(1), as opposed to Rule 12(b)(6). We construe this aspect of defendants' motion under the standards applicable to Rule 12(b)(6) for the purposes of this appeal.

However, we need not decide whether the District Court correctly reviewed defendants' motion to dismiss on sovereign immunity grounds as a challenge to the District Court's subject-matter jurisdiction, nor need we consider the related question of whether facts outside plaintiffs' amended complaint could be considered for the purposes of resolving the motion. *Cf. Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998) (stating that the question of whether "Eleventh Amendment immunity is a matter of subject matter jurisdiction" is one that "we have not decided"); *Woods v. Rondout Valley Central Sch. Dist. Bd of Educ.*, 466 F.3d 232, 237-39 (2d Cir. 2006) (discussing ambiguities in Supreme Court's treatment of Eleventh Amendment sovereign immunity defense). This is so because, as explained *post*, even assuming *arguendo* the version of the facts urged by defendants, they are not entitled to sovereign immunity with respect to the instant claims.

Court, the State of Connecticut was facing a budget crisis at the time the dismissals were ordered. *See State Employees Bargaining Agent Coalition v. Rowland*, Civ. No. 3:03CV221 (AVC), 2006 WL 141645, at *1 (D. Conn. Jan. 18, 2006) (hereinafter, "*Dist. Ct. Op.*"). Accordingly, we briefly review Connecticut law governing modifications to the state budget process before setting forth plaintiffs' allegations.

Under Connecticut's constitution and statutory law, the Governor and the state legislature share responsibilities for administering the state budget. The Governor is required by law to present a budget plan to the General Assembly every two years. *See* Conn. Gen. Stat. §§ 4-72, 4-73. Each state agency must submit to the Governor, through the Secretary of OPM, a requisition for a quarterly allotment of funds. *See id.* § 4-85(a). The Governor may deny the request for funds if he determines that a change in circumstances since the adoption of the budget requires a modification. *See id.* § 4-85(b)(1). Before any modification goes into effect, the Governor must file a report with the joint standing committee of the General Assembly charged with responsibility for budget appropriations. The report must describe the change in circumstances requiring budget reductions. If a deficit of more than one percent of the state's general fund of appropriations is projected, the Governor must also devise and implement a plan to prevent a budget deficit. *See id.* § 4-85(b)(2).

Plaintiffs filed the instant action in January 2003, approximately two months after the terminations began to take effect. They filed an amended complaint in May 2003, at a time when the terminations allegedly "continued to be implemented and [were] scheduled to continue in the future." Plaintiffs do not refer to Connecticut's budget crisis in their amended complaint. Instead, plaintiffs allege that defendants terminated the plaintiff employees because of anti-union animus and in retaliation for several plaintiff unions' failure to support defendant Rowland in his re-election campaign. In particular, plaintiffs allege that, in November 2002, shortly after Rowland was re-elected Governor, Rowland and Ryan sought changes to the collective bargaining agreements previously reached between the plaintiff unions and the State of Connecticut. Defendants demanded that the

6

unions grant concessions in the form of reduced health care and pension benefits, totaling over $450 million annually. Defendants allegedly threatened that if the unions did not agree to the concessions, defendants would terminate the employment of unionized state workers.

When plaintiffs refused to agree to the proposed concessions, defendants allegedly "carried out their prior threats" and announced that they would terminate approximately 3,000 unionized state employees. *Id.* ¶ 42. The terminations began to take effect on November 18, 2002, with defendants allegedly "intentionally singl[ing] out only union members for termination." *Id.* ¶ 44. According to plaintiffs, "[a]ll of the state union employees selected for termination [were] members of the endorsing unions that supported defendant Rowland's opponent in the 2002 gubernatorial race and opposed defendant Rowland's re-election." *Id.* ¶ 58. In contrast, defendants did not fire any employees belonging to the only state employee union that supported Rowland during his 2002 re-election campaign, the Connecticut State Police Union. Plaintiffs further allege that "[t]he Connecticut General Assembly did not participate in demanding that [plaintiffs] agree to $450 million in contract concessions, did not participate in threatening termination of union members . . . and was not involved in determining whether any (and, if so, which) state union employees would be terminated when the demands were not granted." *Id.* ¶ 49.

On the basis of the foregoing allegations, plaintiffs claim that "defendants Rowland and Ryan, in their official capacities . . . violated and will in the future violate the rights of [plaintiff employees] to support, individually and through their union, political candidates of their choice, without reprisal, as guaranteed by the First and Fourteenth Amendment rights to freedom of political speech and freedom of political association, in violation of 42 U.S.C. § 1983." *Id.* ¶ 61. They further assert that "because plaintiffs have asserted their rights under the [bargaining agreement], as protected by the Fifth Amendment to the United States Constitution and by the Contract Clause of the United States Constitution, defendants have penalized and/or sought to penalize [plaintiffs] by depriving them, or

7

threatening to deprive them, of their right to continued public employment and/or to benefits arising out of their public employment." *Id.* ¶ 59. Plaintiffs claim that they "have suffered and will in the future suffer irreparable harm as a result of defendants' conduct." *Id.* ¶ 62.

Plaintiffs' amended complaint seeks compensatory and punitive money damages from defendants in their personal capacities. Plaintiffs also seek injunctive relief in the form of an order (1) "compelling defendants . . . in their official capacities, to reinstate [individual plaintiffs] to their former positions with the State of Connecticut or such other position as the Court deems appropriate, with full and appropriate restoration of seniority and benefits"; (2) "enjoining defendants, in their official capacities, from ordering further terminations of members of the plaintiff Unions on account of their participation in or support of constitutionally-protected union activities"; and (3) preventing defendants from "penalizing," "retaliating against," or "undermining" plaintiffs for their refusal to grant concessions and for their failure to support defendant Rowland's re-election campaign. *Id.* at 31-32.

**B. District Court Proceedings**

The case was originally assigned to Judge Alvin W. Thompson. On July 7, 2003, defendants filed a motion to dismiss the amended complaint. In their motion to dismiss, defendants asserted, *inter alia*, that (1) plaintiffs' claims were barred by the doctrine of absolute legislative immunity; (2) plaintiffs' claims were barred by the doctrine of sovereign immunity; and (3) defendants were entitled to qualified immunity with respect to plaintiffs' claims for money damages. In November 2005, while defendants' motion to dismiss was still pending, the case was reassigned to Judge Covello, who denied defendants' long-pending motion to dismiss in an opinion dated January 18, 2006.

In its opinion, the District Court held that "discovery is required before the court can determine whether the defendants are entitled to the defense" of legislative immunity. *Dist. Ct. Op.*, 2006 WL 141645, at *3. The District Court relied on the Supreme Court's decision in *Bogan* in concluding that, in order for absolute legislative immunity to apply to defendants' acts, the acts in

8

question must be both "(1) substantively legislative, *i.e.*, acts that involve policy making," and "(2) procedurally legislative, *i.e.*, passed by means of established legislative procedures." *Id.*; *see also Bogan*, 523 U.S. at 49 (holding that legislative immunity applied to a city council member's voting on an ordinance that eliminated plaintiff's job position, mayor's proposal of the job elimination, and the mayor's signing the ordinance into law). Applying these requirements to the instant case, the District Court concluded that defendants' "eliminat[ion] of some 3,000 union jobs through executive order" was "substantively legislative because it reflected a discretionary, policymaking decision implicating the state's budgetary priorities and its services to constituents." *Dist. Ct. Op.*, 2006 WL 141645, at *3. Nevertheless, the District Court concluded that before defendants could successfully invoke legislative immunity, discovery was required to determine if defendants' actions were procedurally legislative. In particular, the Court concluded that "although the record . . . supports a finding that the state faced a budget crisis in the fall of 2002, there is no evidence to support a finding that there existed a projected budget deficit of more than one percent, or that Governor Rowland was acting pursuant to Conn. Gen. Stat. § 4-85(b) in ordering the layoffs." *Id.* at *4 n.5. Accordingly, the Court was "unable to conclude that the actions complained of were legitimately legislative . . . [on the basis] of which the defendants are absolutely immune." *Id.* at *4.

Addressing Eleventh Amendment sovereign immunity, the District Court held that plaintiffs' claims were barred insofar as they sought to recover money damages. The District Court found that plaintiffs' claims were not barred, however, insofar as they sought injunctive relief. In explaining its conclusion with respect to money damages, the District Court relied on the Supreme Court's decision in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), in which the Supreme Court held that a lawsuit is "against the sovereign [and thus barred by the Eleventh Amendment] if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the government from acting, or to

9

compel it to act." *Id.* at 102 n.11, *quoted by Dist. Ct. Op.*, 2006 WL 141645, at *5. The District Court

concluded that, although the claims for monetary relief in plaintiffs' amended complaint were

nominally brought against defendants in their individual capacities, the relief sought "could hardly be

accomplished in the absence of substantial interference with the public administration or the loss of

substantial public resources." *Dist. Ct. Op.*, 2006 WL 141645, at *5. Accordingly, the District Court

held that "[a]ny claim for money damages," including back-pay or retroactive benefits, was barred by

the Eleventh Amendment.[5] *Id.* The District Court held that, on the other hand, the Eleventh

Amendment presented no bar to the claims for prospective injunctive relief against defendants in their

official capacities.[6] *Id.*

On April 5, 2006, the District Court entered an order amending its earlier opinion (the "April 5

Order"). In particular, the District Court revised its earlier statement, in footnote 5 of the prior

opinion, that "there is no evidence to support a finding that there existed a projected budget deficit of

more than one percent, or . . . that [the governor filed a] report or plan, or even an affirmation that the

governor had invoked his authority under § 4-85(b)." April 5 Order at 2, Joint Appendix ("J.A.") 90.

The Court noted that, following its earlier ruling, "defendants filed for the first time a copy of an April

1, 2003 letter from the Office of the Comptroller to Governor Rowland stating that in September of

2002, there existed a deficit exceeding one percent and that on December 6, 2002, the governor

---

[5] Plaintiffs argue that it is unclear whether the District Court intended to dismiss all of their claims for money damages. *See* Appellees' Br. at 51 n.15 (contending that "[t]he precise meaning of this aspect of the District Court's ruling is unclear" and that the District Court might have intended not to bar claims for "other aspects of compensatory damages" such as "emotional distress" and for "punitive damages"). We find no ambiguity in the District Court's statement that "[a]ny claim for money damages. . . is barred," *Dist. Ct. Op.*, 2006 WL 141645, at *5 (emphasis added), and we therefore reject plaintiffs' assertion that the District Court's ruling was unclear. We express no opinion on the merits of the District Court's ruling on the claims for money damages, which is not at issue in the instant appeal. *See* Appellees' Br. at 51 (acknowledging that the dismissal of plaintiffs' claims for money damages is not before the Court on this interlocutory appeal).

[6] The District Court also denied as "moot" defendants' claim that qualified immunity shielded them from liability. In particular, the District Court concluded that because qualified immunity is a defense against suits for money damages, and because plaintiffs' claims for money damages were precluded on Eleventh Amendment grounds, it was not necessary to address defendants' qualified immunity arguments. *Dist. Ct. Op.*, 2006 WL 141645, at *5.

10

furnished a deficit reduction plan." On the basis of that letter, the District Court concluded:

> Because the statute does not require the legislature to approve the governor's [budget] plan, or even for the governor to follow his own plan when making deficit reduction decisions, a court could reasonably conclude that the defendants complied with Gen. Stat. § 4-85(b)(2) when ordering the job terminations at issue, and hence, are entitled to legislative immunity. However, in this Court's view, before the defendants can cloak their actions with immunity, they must make out a good faith claim to it, that is, they must show that they ordered the layoffs to achieve budgetary savings under Conn. Gen. Stat. § 4-85(b)(2), and not for other reasons.

*Id.* The Court then concluded that "because this remains a disputed issue of fact, . . . defendants are not entitled to legislative immunity at this juncture." *Id.* at 2-3, J.A. 90-91. The District Court therefore reiterated its earlier denial of defendants' motion to dismiss plaintiffs' claims for injunctive relief on the basis of legislative immunity.

This appeal followed.

## II. DISCUSSION

### A. Appellate Jurisdiction

Defendants seek to establish appellate jurisdiction over this interlocutory appeal under the collateral order doctrine, which permits interlocutory appellate review of certain non-final District Court decisions. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-47 (1993) (interlocutory review of an Eleventh Amendment claim); *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir. 2003) (interlocutory review of a legislative immunity claim).

"Under the collateral order doctrine, . . . [a]n order denying a motion to dismiss a complaint against a[n] . . . official when the dismissal motion is based on the official's assertion of absolute or qualified immunity is immediately reviewable, to the extent that the denial turns on issues of law." *Almonte*, 478 F.3d at 105 (internal quotation marks omitted). However, "if a factual determination is a necessary predicate to the resolution of whether . . . immunity is a bar, review is postponed" and we

11

dismiss the appeal. *Id.* (quoting *Parkinson v. Cozzolino*, 238 F.3d 145, 149 (2d Cir. 2001)).

## B. Legislative Immunity

We first address defendants' argument that legislative immunity bars plaintiffs' entire complaint and that the District Court therefore erred in concluding that discovery was necessary to determine whether legislative immunity applies to the instant claims.

### 1. Standard of Review and Governing Law

When a district court denies absolute or qualified immunity in response to a motion to dismiss, we review the district court's denial *de novo*. *See Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (reviewing claim of qualified immunity).

Under the Supreme Court's functional test for determining the applicability of absolute legislative immunity, "whether immunity attaches turns not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question." *Almonte*, 478 F.3d at 106; *see also Harhay*, 323 F.3d at 210 (citing *Bogan*, 523 U.S. at 54). In particular, "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan*, 523 U.S. at 54 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). Legislative immunity shields from suit not only legislators, but also officials in the executive and judicial branches when they are acting "in a legislative capacity." *Bogan*, 523 U.S. at 55 (holding that a mayor was entitled to legislative immunity for acts taken that were "integral steps in the legislative process"); *Supreme Court of Va. v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 734 (1980) (holding that Virginia Supreme Court justices were entitled to legislative immunity for acts taken in their legislative capacities).

### 2. Analysis

### (a) Whether Legislative Immunity May Bar Claims for Injunctive Relief

It is uncontroversial that legislative immunity may bar claims for money damages brought against state and local officials in their personal capacities. *See, e.g.*, *Almonte*, 478 F.3d at 106. However,

12

there is arguably conflicting case law on whether legislative immunity applies at all to claims for injunctive relief brought against state officials in their official capacities. Therefore, before addressing the legislative nature *vel non* of defendants' allegedly unlawful actions, we must address, as a threshold matter, whether legislative immunity is even available as a potential defense to plaintiffs' claims for injunctive relief.

Generally speaking, "state legislators enjoy common-law immunity from liability for their legislative acts." *Consumers Union*, 446 U.S. at 732. The immunity "is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause."[7] *Id.* Tracing its roots to the "[p]arliamentary struggles of the Sixteenth and Seventeenth Centuries," *Tenney*, 341 U.S. at 372, the doctrine of legislative immunity found early expression in state constitutional provisions antedating the Federal Constitution, *see id.* at 373-75 (discussing early state constitutional provisions in Maryland, Massachusetts, and New Hampshire), and was "carefully preserved" at the time of the Founding, *id.* at 376. Legislative immunity has been deemed necessary, in part, because of the recognition by courts that civil litigation, "whether for an injunction or damages, creates a distraction and forces [legislators] to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Consumers Union*, 446 U.S. at 733 (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975)).

We first addressed whether legislative immunity may shield state officials from claims for injunctive relief (as opposed to claims for damages) in *Star Distributors, Ltd. v. Marino,* 613 F.2d 4 (2d Cir. 1980). In that case, we considered whether legislative immunity applied to bar claims seeking to enjoin members of the New York State Legislature from enforcing subpoenas that required the plaintiffs to appear before a select committee of the legislature. We noted that the Supreme Court had concluded, on the basis of the Speech and Debate Clause, that federal legislators "acting within the

---

[7] The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1.

scope of their legislative function are immune from both damage and injunction suits," *Star Distributors*, 613 F.2d at 6 (citing *Eastland*, 421 U.S. at 503), and that state legislators were entitled to legislative immunity from suits for damages, *see id.* (citing *Tenney*, 341 U.S. at 367). We determined that, due to the "shared origins and justifications of [the Speech or Debate Clause and the doctrine of legislative immunity]," it was "inappropriate for us to differentiate the scope of the two without good reason." *Id.* We relied for support on the Supreme Court's decision in *United States v. Johnson*, 383 U.S. 169 (1966), in which the Court had stated that "the state legislative privilege [in suits brought under 42 U.S.C. § 1983 is] on a parity with the similar federal privilege" under the Speech or Debate Clause. *See Star Distributors*, 613 F.2d at 8 (quoting *Johnson*, 383 U.S. at 180). Accordingly, we held that "state legislators, to the same extent as their federal counterparts, are immune from suit under § 1983 for injunctive relief as well as damages based on their activities within the traditional sphere of legislative activity." *Id.* at 9.

Shortly after we decided *Star Distributors*, the Supreme Court similarly held that the doctrine of legislative immunity barred claims against state officials for injunctive relief, as well as for damages. In *Consumers Union*, 446 U.S. at 719, the Court examined whether legislative immunity barred claims for declaratory and injunctive relief brought against members of the Virginia Supreme Court for their promulgation and enforcement of the Virginia Bar Code. After concluding that the *promulgation* of the Bar Code by a state court was a legislative act, the United States Supreme Court held that legislative immunity barred not only plaintiff's claims for damages, but also those claims for declaratory and injunctive relief that would have forced the Supreme Court to amend or repeal the code. *See id.* at 733-34 (reasoning that "there is little doubt that if the Virginia Legislature had enacted the State Bar Code and if suit had been brought against the legislature, its committees, or members for refusing to amend the Code," the suit would be barred "on the grounds of absolute legislative immunity"). The Court held, however, that defendants could be sued for injunctive relief with respect to their *enforcement* of the Bar Code because legislative immunity would not apply to their enforcement activities. *See id.* at 734-

14

37. In explaining why the doctrine of legislative immunity was not limited to claims for damages, the Court reasoned:

> We have . . . recognized that state legislatures enjoy common-law immunity from liability for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause, *Tenney v. Brandhove*, 341 U.S. 367 (1951). In *Tenney,* we concluded that Congress did not intend § 1983 to abrogate the common-law immunity of state legislators. Although *Tenney* involved an action for damages under § 1983, its holding is equally applicable to § 1983 actions seeking declaratory or injunctive relief.

*Id.* at 732-33. The Court then cited approvingly our opinion in *Star Distributors*, and its holding that legislative immunity "bars an action for declaratory and injunctive relief just as it bars an action for damages." *Id.* at 732 n.10 (citing *Star Distributors*, 613 F.2d at 4); *see also Colon Berrios v. Hernandez Agosto*, 716 F.2d 85, 88 (1st Cir. 1983) ("[T]he Supreme Court has clearly held that state legislators acting in a legislative capacity are absolutely immune from the imposition of equitable remedies in a suit brought under 42 U.S.C. § 1983") (citing *Consumers Union*, 446 U.S. at 731-34).

Neither our Court nor the Supreme Court has expressly questioned, much less overruled, the holdings of *Star Distributors* and *Consumers Union*. Nevertheless, the Supreme Court on two occasions has somewhat cryptically cast doubt on its holding in *Consumers Union* that legislative immunity may bar claims for injunctive relief as well as those for damages.

In *Kentucky v. Graham*, 473 U.S. 159 (1985), the Supreme Court considered whether plaintiffs who had obtained damages in an action against state employees in their personal capacities could maintain a claim for attorney's fees under 42 U.S.C. § 1988 against the State of Kentucky. The Court concluded that the claim for attorney's fees could not be maintained because the State of Kentucky was not a party to the suit and the remaining defendants were not, and could not be, sued for damages in their official capacities because Eleventh Amendment sovereign immunity barred those claims. *See id.* at 168-71. The Court, however, went on to explain in *dicta* the difference between a personal-capacity suit and an official-capacity suit, stating:

15

> When it comes to defenses to liability, an official in a personal capacity action may . . . be able to assert personal immunity defenses . . . . In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.

*Id.* at 166-67 (citations omitted).[8] Accordingly, under a potential reading of *Graham*, legislative immunity might not be available as a defense in a suit for injunctive relief against state agents in their official capacities.[9]

More recently, the Supreme Court in *Board of County Commissioners v. Umbehr*, 518 U.S. 668 (1996), indicated in *dicta* that legislative immunity may not bar official-capacity claims altogether. The Court in *Umbehr* stated glancingly in a footnote that a local government board's asserted legislative immunity defense was "moot" because only official-capacity claims were before the Court and because "immunity from suit under § 1983 extends to public servants only in their *individual* capacities." 518 U.S. at 677 n.*. The Supreme Court in *Umbehr* did not cite, much less address or discuss, its earlier holding in *Consumers Union* that legislative immunity was available to *state* defendants who were sued in

---

[8] As the Court also explained,

> [p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . . Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Graham*, 473 U.S. at 165-66 (internal citations and quotation marks omitted). A plaintiff typically seeks injunctive relief against state agents only in their official capacities, because the remedy sought would be provided by the state itself.

[9] This possible reading of *Graham*, however, is called into question by another aspect of the decision. *Graham* also discussed with approval the Court's earlier holding in *Consumers Union* that plaintiffs could not claim attorney's fees premised on the legislative acts of the defendant Virginia Supreme Court justices, who were sued for injunctive relief in their official capacities. *See id.* at 164. The Court noted that in *Consumers Union* it had held that Congress did not intend "to permit an award of attorney's fees to be premised on acts for which defendants would enjoy absolute legislative immunity." *Id.* (quoting *Consumers Union*, 446 U.S. at 738). This supported the Court's more general conclusion in *Graham* that "where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant." *Id.* at 165. This discussion indicates that *Graham* did not intend to overrule the holding in *Consumers Union* that legislative immunity remains available as a defense to defendants who are sued for injunctive relief in their official capacities.

16

their official capacities. *See Consumers Union*, 446 U.S. at 731-34.

We too have arguably departed from the Supreme Court's holding in *Consumers Union* that legislative immunity applies to claims for injunctive relief, and from our own earlier holding to the same effect in *Star Distributors*. On three separate occasions, in cases involving suits against local government officials and entities, we have suggested that legislative immunity is a personal defense that government officials may not assert when they are sued in their official capacities. *See Almonte*, 478 F.3d at 106 (stating that "[i]mmunity, either absolute or qualified, is a *personal* defense that is available only when officials are sued in their individual capacities") (emphasis in original); *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999) (stating that "[t]he immunities Town Board members enjoy when sued personally do not extend to instances where they are sued in their official capacities"); *Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 73 (2d Cir. 1992) (stating that "[t]he fallacy in the town's argument on appeal lies in its assumption that the absolute legislative immunity of the town councilmen applies when the suit is brought against them in their *official* capacities") (emphasis in original). In *Morris*, we held explicitly that legislative immunity did not bar claims for injunctive relief in official-capacity suits against local government officials. *See Morris*, 196 F.3d at 111.

We do not think that *Almonte*, *Morris*, and *Goldberg* are applicable here. Each of those cases involved official-capacity claims against local-level officials, rather than state officials. While legislative immunity is available to local officials who are sued in their individual capacities, *see Bogan*, 523 U.S. at 54, the Supreme Court has made clear that, due to the historical unavailability of various immunity defenses to local governments, those governments (or "municipal corporations") are not entitled to the benefit of any immunities that might be available to local officials sued under § 1983. *See Owen v. City of Independence*, 445 U.S. 622, 638 (1980) ("[T]here is no tradition of immunity for municipal corporations, and neither history nor policy supports a construction of § 1983 that would justify the qualified immunity accorded [defendant municipality]"); *see also Leatherman v. Tarrant County Narcotics Intelligence*

17

*and Coordination Unit*, 507 U.S. 163, 166 (1993) ("[U]nlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983."); *Goldberg*, 973 F.2d at 73 (noting that "the immunities historically granted other government actors in § 1983 actions had not been available to municipal corporations").

The Supreme Court has never reached a similar conclusion with respect to suits against states, or against state agents in their official capacities. This may explain why we did not attempt to reconcile the holdings of *Almonte*, *Morris*, and *Goldberg* with our earlier holding in *Star Distributors*, or with the Supreme Court's similar holding in *Consumers Union*. Because the three cases addressing the availability of legislative immunity to municipalities did not cite or discuss, much less overrule, *Star Distributors*, and no decision of the Supreme Court has overruled the relevant holdings in *Consumers Union* or *Star Distributors*, we adhere to the law of the Circuit that legislative immunity may bar claims for injunctive relief against state officials. *See, e.g., Nicholas v. Goord*, 430 F.3d 659 (2d Cir. 2005) ("[W]e are bound by our own precedent unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court *en banc*.") (internal quotation marks omitted).

We adhere to this conclusion, even in light of the recent Supreme Court decisions in *Graham* and *Umbehr*, for two reasons. First, the Speech or Debate Clause, which has been recognized as coterminous with the doctrine of absolute legislative immunity, *see Consumers Union*, 446 U.S. at 733, has long been applied to bar suits for both types of relief, and neither we nor the Supreme Court has had occasion to question that Clause's scope in this regard since our holding in *Star Distributors*. *Cf. Eastland*, 421 U.S at 503 ("[A] private civil action, *whether for an injunction or for damages*, creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks to defend the litigation.") (emphasis added). Second, and more importantly, we are unwilling to ignore the Supreme Court's squarely-applicable precedent in *Consumers Union* simply because of broadly-stated *dicta* in *Graham* not specifically referring to legislative immunity, *see Graham*, 473 U.S. at 166-

18

67—particularly in view of its approving discussion of *Consumers' Union* elsewhere in the opinion, *see id.* at 164—or because of a footnote in *Umbehr* concerning the immunity of local, rather than state, officials, *see Umbehr*, 518 U.S. at 677 n.*.

Our conclusion is supported by recent decisions of the Third and Eleventh Circuits holding that legislative immunity may bar claims for injunctive relief against state officials, *see Scott v. Taylor*, 405 F.3d 1251 (11th Cir. 2005); *Larsen v. Senate of Pa.*, 152 F.3d 240 (3d Cir. 1998), as well as by earlier decisions of the Sixth and Seventh Circuits reaching similar conclusions, *see Risser v. Thompson*, 930 F.2d 549, 551 (7th Cir. 1991) (injunctive relief against Governor of Wisconsin, acting in a legislative capacity, was barred because "[l]egislators' immunity is absolute and extends to injunctive as well as to damages suits"); *Alia v. Michigan Supreme Ct.*, 906 F.2d 1100, 1102 (6th Cir. 1990) (injunctive relief against Justices of Michigan Supreme Court for actions taken in their legislative capacity was barred by legislative immunity).

In *Scott*, the Eleventh Circuit held that the claims of a plaintiff who sought injunctive relief against state legislators were barred by legislative immunity. 405 F.3d at 1255-56. In reaching this conclusion, the Eleventh Circuit attempted to reconcile *Graham*'s *dicta* that an official-capacity defendant cannot invoke personal defenses but can only invoke official immunities applicable to the government as an entity, *see Graham*, 473 U.S. at 166-67, with the Supreme Court's decision in *Consumers Union*. The Eleventh Circuit began by explaining that the reason "personal" defenses such as legislative immunity "are generally unavailable in official capacity suits [is] because such suits are treated as suits against the underlying entity [*i.e.*, the state]," and not against the individual. *Scott*, 405 F.3d at 1255. The Eleventh Circuit then noted that under *Ex parte Young*, "official-capacity actions for prospective relief are *not* treated as actions against the state." *Id.* at 1255 (emphasis added). This led the Eleventh Circuit to conclude that the plaintiff's action seeking "prospective injunctive relief against [defendants] in their official capacities" was "not to be treated as a[n] action against the entity," but rather, as an

19

action against the individual legislators. *Id.* The Eleventh Circuit therefore held that the individual defense of legislative immunity *was* available for the same reason that the official defense of Eleventh Amendment immunity *was not* available—namely, because the suit in question was not considered to be a suit against the state itself. *Id.*

In *Larsen*, 152 F.3d at 240, the Third Circuit held that legislative immunity barred claims for injunctive relief in a suit brought by a former Pennsylvania Supreme Court justice. The plaintiff sought reinstatement to judicial office following his impeachment and removal by the State Senate. The Third Circuit relied on the Supreme Court's opinion in *Consumers Union*, and on the principles embodied by the Speech or Debate Clause, to conclude that "*at least in appropriate cases*, legislators are entitled to immunity from claims for injunctive and/or declaratory relief." *Larsen*, 152 F.3d at 253 (emphasis added).

"Without attempting to draw a line for all cases," the Third Circuit determined that the relevant question in *Larsen* was "whether [plaintiff's] request for prospective relief from the Senators could be accorded consistent with the policies underlying legislative immunity." *Id.* The Third Circuit then concluded that legislative immunity applied because the plaintiff "seeks reinstatement—nothing less than that the individual Senators rescind their guilty vote on his impeachment." *Id.* at 254. It noted that "[i]t is difficult to imagine a remedy that would more directly interfere with the role assigned exclusively to the Senators by the Pennsylvania Constitution." *Id.*[10]

Accordingly, we adhere to our holding in *Star Distributors*, 613 F.2d at 8-9, and reaffirm the vitality of its teaching that claims for injunctive relief against defendant state officials, sued in their official capacities, may be barred by the doctrine of legislative immunity, notwithstanding arguably

---

[10] The Third Circuit recently reaffirmed its conclusion that legislative immunity may, in appropriate cases, bar claims for injunctive relief against state officials sued in their official capacity in *Baraka v. McGreevey*, 481 F.3d 187, 202-03 (3d Cir. 2007) (holding that claim for reinstatement by former poet laureate of New Jersey, whose position was eliminated by the state legislature, was barred by legislative immunity).

20

contradictory *dicta* in *Graham* and *Umbehr*.

**(b) Effect of Legislative Immunity on Plaintiffs' Claims**

A defendant's entitlement to legislative immunity from claims for injunctive relief does not depend solely on whether the defendant's *acts* giving rise to the alleged violation were "taken in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54 (internal quotation marks omitted). We agree with the Third Circuit that, in considering whether the doctrine of legislative immunity is available to foreclose claims for injunctive relief in official-capacity suits, we must also look more specifically to whether granting the particular *relief sought* would enjoin defendants in their legislative capacities. *See Larsen*, 152 F.3d at 253 (requiring consideration of "the policies underlying legislative immunity" and of "the extent to which a court could order [the desired] relief"). This is so because, unlike a court's award of compensatory damages, which remedies discrete injuries caused by a defendant's prior acts, a court's grant of injunctive relief seeks to shape and direct future acts potentially different in nature and scope from those giving rise to the litigation. Therefore, even where a defendant's prior conduct giving rise to the cause of action consists of legislative acts for which the defendant is immune, the same may not be true of the future acts that would be compelled or prohibited by a grant of injunctive relief.

The case of *Consumers Union* is illustrative. In that case, the Supreme Court applied legislative immunity to bar plaintiff's claims for injunctive relief insofar as the relief sought would compel the defendants to perform a legislative act—the repeal or amendment of the state's bar code to conform with constitutional requirements. *See Consumers Union*, 446 U.S. at 733-34 (holding that court and its members were absolutely immune from suit for failure to amend bar code). The Court concluded, however, that legislative immunity did not bar claims for injunctive relief that would enjoin the defendant justices from committing a distinctly non-legislative act—independent enforcement of the unconstitutional provisions of the bar code against particular individuals. *Id.* at 734-36.

21

Other cases have illustrated that even where a defendant commits allegedly unlawful acts in a legislative capacity, the desired injunctive order might act upon the defendant (or another defendant) in a purely non-legislative capacity. In such cases, we see no reason why a defendant should be entitled to legislative immunity simply because the harm alleged originated, in some sense, with a legislative act. *See*, *e.g.*, *Kilbourn v. Thompson*, 103 U.S. 168, 196-205 (1880) (in case involving Speech or Debate Clause, members of House of Representatives were immune for ordering an allegedly false arrest, but the sergeant-at-arms was not immune for carrying out the arrest).

Accordingly, before defendants in the instant case can invoke legislative immunity to defeat a claim for injunctive relief, they must show both (1) that the acts giving rise to the harm alleged in the complaint (*i.e.* termination of plaintiffs from their positions in retaliation for political affiliations and union activities) were undertaken when defendants were acting in their legislative capacities under the functional test set forth in *Bogan,* 523 U.S. at 54-56; and (2) that the particular relief sought (*e.g.*, reinstatement of plaintiffs to their previous positions or to other positions) would enjoin defendants in their legislative capacities, and not in some other capacity in which they would not be entitled to legislative immunity.

**(1) Whether Defendants' Alleged Acts Were "Legislative" Under *Bogan***

Defendants argue that, in firing plaintiffs and (allegedly) eliminating their positions, they were engaging in acts that were legislative in nature and thus, entitled to immunity for those acts. We first address the District Court's application of the functional test set forth by the Supreme Court in *Bogan* for deciding whether a defendant's acts are "legislative" and therefore protected by the doctrine of absolute legislative immunity.

According to that test, two factors are relevant in determining whether a defendant's acts are within the "sphere of legitimate legislative activity." *Id.* at 54 (internal quotation marks). First, it is relevant whether the defendants' actions were legislative "in form," *i.e.*, whether they were "integral

22

steps in the legislative process." *Id.* at 55. Second, it may also be relevant whether defendants' actions were legislative "in *substance*," *i.e.*, whether the actions "bore all the hallmarks of traditional legislation," including whether they "reflected . . . discretionary, policymaking decision[s] implicating the budgetary priorities of the [government] and the services the [government] provides to its constituents." *Id.* at 55-56.

Although the Court in *Bogan* did not state explicitly whether establishing both the procedural and substantive elements of this inquiry was required for legislative immunity to apply, we agree with the District Court that establishing both elements is required in these circumstances. In particular, we think that before high-level *executive* branch officials in the State of Connecticut can claim the protections of an immunity traditionally accorded to members of the *legislative* branch, it is important that they show that their activities were "legislative" both in form and in substance. *See Baraka v. McGreevey*, 481 F.3d 187, 199 (3d Cir. 2007) ("Regardless of the level of government, we believe the two-part substance/procedure inquiry is helpful in analyzing whether a non-legislator performing allegedly administrative tasks is entitled to immunity."). Accordingly, we conclude that the District Court properly framed its broad inquiry as whether defendants' alleged acts were "both: (1) substantively legislative, *i.e.*, acts that involve policy making; and (2) procedurally legislative, *i.e.*, passed by means of established legislative procedures." *Dist. Ct. Op.*, 2006 WL 141645, at *3 (citing *Ryan v. Burlington County*, 889 F.2d 1286, 1290-91 (3d Cir. 1989)). We turn now to evaluate the District Court's application of this inquiry to facts of the instant case.

Defendants argue that the District Court erred in concluding that further factual discovery is necessary to determine whether their alleged acts were procedurally legislative under the first prong of the *Bogan* test. In particular, defendants contend that the District Court impermissibly focused on defendants' motives, rather than on the nature of their acts, when conducting its analysis. Defendants point specifically to the District Court's conclusion in the April 5 Order that further discovery is

23

necessary so that the Court can determine whether defendants are able to make "a good faith [showing] . . . that they ordered the layoffs to achieve budgetary savings under Conn. Gen. Stat. § 4-85(b)(2), and not for other reasons." April 5 Order at 2, J.A. 90.

We agree with defendants that the District Court impermissibly focused on defendants' motives when concluding that discovery was warranted. It has been well-settled since the Supreme Court's decision in *Bogan* that courts may not consider a defendant's motives when assessing the legislative nature *vel non* of his actions. *See Bogan*, 523 U.S. at 54-55. Recognizing that "the privilege of absolute immunity 'would be of little value if [legislators] could be subjected to . . . the hazard of a judgment against them based upon a jury's speculation as to motives,'" *id.* at 54 (quoting *Tenney*, 341 U.S. at 377), and that "it is not consonant with our scheme of government for a court to inquire into the motives of legislators," *id.* at 55 (quoting *Tenney*, 341 U.S. at 377), the Supreme Court in *Bogan* held that questions concerning the defendants' motives were wholly irrelevant to its determination of whether they were entitled to legislative immunity. *See id.* The Court concluded that the relevant question was "whether, *stripped of all considerations of intent and motive*, petitioner's acts were legislative." *Id.* (emphasis added).

The District Court thus erred when it determined that before defendants' activities could be cloaked with legislative immunity, defendants would have to make a "good faith showing" as to their "reasons" for ordering the alleged terminations. Neither a showing of "good faith" nor an inquiry into defendants' subjective "reasons" addresses the relevant issue of whether the "nature of the act[s]" that gave rise to the alleged harm was legislative or executive. *Id.* at 54.

Nevertheless, we agree with the District Court's ultimate conclusion that further discovery is necessary to determine whether defendants' acts were indeed procedurally legislative under *Bogan*. We are unable to determine on the current record whether defendants' alleged acts were "integral steps in the legislative process." *Id.* at 55. Although the District Court concluded that "the governor had the legislative authority under Conn. Gen. Stat. § 4-85(b)(2) to make deficit reduction decisions," April 5

24

Order at 2, J.A. 90, it is unclear whether the alleged terminations were integral steps in the statutory budget process. More specifically, the record does not show whether defendants acted pursuant to their statutory budget authority when they ordered the terminations, or whether the terminations occurred independent of (or in violation of) that authority.[11] Thus, whether defendants' alleged acts were procedurally legislative under the functional test of *Bogan* remains a disputed question of fact that must be resolved after discovery. *Compare* Appellants' Br. at 41-42 (contending that "when the Governor acted to remedy the State's fiscal condition by revising its budget and reducing its workforce, he . . . was fully authorized to make legislative decisions"), *with* Appellees' Br. at 57 ("Plaintiffs are prepared to prove that Governor Rowland never invoked his rescission authority . . . and did not follow the mandatory statutory procedures"), *and id.* at 58 (asserting that the Governor "did not act within 30 days of being notified of the deficit," "did not submit a report explaining the reasons for the deficit [as] required by § 4-85(b)(2)," and "did not submit a plan for spending reductions that he could implement to eliminate the budget deficit").

We turn next to the District Court's application of the second prong of the *Bogan* test, inquiring whether the acts undertaken by defendants were substantively legislative. Defendants argue that because the District Court concluded that defendants' actions were "substantively legislative," and because the Supreme Court in *Bogan* did not address whether legislative immunity attaches *only* to actions that are *both* substantively and procedurally legislative, we should conclude that legislative immunity bars the instant action. Appellants' Br. at 37.

We reject this argument for two reasons. First, as explained above, to establish a legislative

---

[11] The District Court did not make any conclusive determinations in this regard. *See* April 5 Order at 2, J.A. 90 (stating that "a court *could* reasonably conclude that the defendants complied with Conn. Gen. Stat. § 4-85(b)(2) when ordering the job terminations at issue here") (emphasis added). Moreover, the amended complaint does not directly address the issue of which, if any, legislative powers were invoked, but simply alleges in a conclusory fashion that "[d]efendants were not acting in a legislative capacity when they made their demands for union contract concessions, when they made their threats of retaliatory union member terminations . . ., and when they implemented the terminations at issue in this lawsuit." Am. Compl. ¶ 50.

25

immunity defense in the instant case, defendants must show that their acts are procedurally, as well as substantively, legislative. Second, the current record does not reveal whether the District Court properly concluded that defendants' actions were substantively legislative. The District Court based its conclusion on its observation that "in this case the governor faced a budget crisis in the fall of 2002, and, as the state's chief executive officer, exercised his discretion to reduce expenditures by demanding collective bargaining agreement concessions and *by eliminating some 3,000 union jobs* through executive order." *Dist. Ct. Op.*, 2006 WL 141645, at *3 (emphasis added).

The elimination of a position, unlike "the hiring or firing of a particular employee," is a substantively legislative act for legislative immunity purposes. *Bogan*, 523 U.S. at 56 (noting that termination of an employee's position "may have prospective implications that reach well beyond the particular occupant of the office"). By contrast, "[a] personnel decision is administrative in nature if it is directed at a particular employee or employees, and is not part of a broader legislative policy." *Almonte*, 478 F.3d at 108; *see also Harhay*, 323 F.3d at 210 ("Discretionary personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to [legislative] immunity . . . ."). However, we do not think it was proper for the District Court to conclude at the pleading stage, and without explanation, that defendants "eliminated" plaintiffs' positions, rather than terminated the employment of particular employees administratively. Plaintiffs do not allege in their amended complaint that defendants "terminat[ed] the budget lines" that would have funded their positions, *Almonte*, 478 F.3d at 108, or that defendants eliminated the positions through other means. Rather, plaintiffs allege only that state union employees were "terminat[ed]" for illegal reasons. *See, e.g.*, Am. Compl. ¶ 42. Moreover, no undisputed record evidence contradicts plaintiffs' allegations. Accepting plaintiffs' allegations as true, as we must in reviewing defendants' motion to dismiss, *see Almonte*, 478 F.3d at 104 & n.2, we conclude that the District Court should not have found that the positions were eliminated.

26

Even assuming *arguendo* that the current record established that *some* positions were eliminated from the state workforce during the relevant time period, defendants cannot demonstrate at this stage of the litigation that their acts were substantively legislative. The District Court did not consider whether *plaintiffs'* positions were eliminated, or whether plaintiffs' loss of their state employment was directly attributable to any budget modifications proposed or implemented administratively by defendants.[12]

Accordingly, discovery is necessary before the District Court can determine conclusively whether defendants' actions were substantively legislative. After discovery, the dispositive question to be answered by the District Court regarding this aspect of its *Bogan* inquiry should be whether plaintiffs' positions were eliminated (a substantively legislative act), *see Almonte,* 478 F.3d at 108, or whether plaintiffs were administratively fired (a substantively non-legislative act), *see id.* The District Court should include within the realm of substantively legislative activity not only any elimination of positions that occurred, but also "any discussions [defendants] may have held, and any agreements they may have made . . . regarding the new budget in the months preceding" any decision to eliminate the positions. *Id.*

Although we do not set forth the precise contours of the distinction between legislative position eliminations and administrative firings, we briefly note, for the benefit of the District Court, the possibility that discovery will reveal facts suggesting defendants initially administratively fired plaintiffs and only subsequently eliminated their positions. In *Jessen v. Town of Eastchester*, 114 F.3d 7 (2d Cir. 1997), we held that a plaintiff could sue municipal board members for firing him administratively before they eliminated his position. We rested our conclusion in *Jessen* on the fact that the "earlier

---

[12] We note that defendants need not prove they acted unilaterally in order for their acts to be legislative. *Cf. Bogan,* 523 U.S. at 55 (concluding, in the context of the procedural component of the two-part inquiry, that a defendant's "introduction of a budget that proposed the elimination of city jobs and his signing the ordinance into law [after passage by a legislative body] were formally legislative").

27

termination from a position which then, at least briefly, remained open was an administrative act that legislative immunity does not protect." *Id.* at 8. But insofar as plaintiffs are seeking reinstatement to positions that have been legislatively eliminated, it would make no difference whether plaintiffs had been administratively fired prior to the legislative position elimination. This is so because, for reasons of legislative immunity, the District Court would lack the power to direct state officials to perform the legislative act of recreating the positions in order to reinstate the plaintiffs to them.

**(2) Whether the Relief Sought Would Enjoin Defendants in Their Legislative Capacities**

Assuming *arguendo* that defendants' alleged actions are substantively and procedurally legislative under *Bogan*, defendants must still show, before they are afforded the protections of legislative immunity as to claims for injunctive relief, that the requested relief would enjoin them in their legislative capacities. Defendants do not address this issue, other than to assert broadly that the reasoning of the Eleventh Circuit's decision in *Scott* is persuasive and should be adopted by our Court. Plaintiffs address the issue more directly when urging us to find as a matter of law that legislative immunity is inapplicable to the instant claims for injunctive relief. In particular, plaintiffs claim that they "do not seek to enjoin defendants from performing any legislative functions," but seek instead merely to prevent defendants "from enforcing unconstitutional legislation . . . that they participated in enacting." Appellees' Br. at 66. Consequently, plaintiffs argue that defendants may not invoke legislative immunity against the instant claims for injunctive relief at this stage, or at any future stage, in the litigation.

Addressing the merits of this argument, we look first to the nature of the relief sought. Plaintiffs' amended complaint seeks relief in the form of an order that would, *inter alia*, "compel[ ] defendants . . . in their official capacities, to reinstate [plaintiffs] to their former positions with the State of Connecticut or such other position as the Court deems appropriate, with full and appropriate restoration of seniority and benefits." Am. Compl. at 32 ¶ 9. We agree with plaintiffs that legislative

28

immunity does not bar the requested relief insofar as it involves reinstatement to existing positions *other than* the positions that plaintiffs previously held—*i.e.*, reinstatement to "other position[s] as the Court deems appropriate." *Id.*; *see also* Appellees' Br. at 42 ("[E]ven if positions occupied by the unreinstated employees do not currently exist, these employees can be reinstated to equivalent positions . . . in any number of other State agencies"); *id.* at 43 ("[E]ven if no such vacancies in the full-time workforce exist, the District Court can order unreinstated workers to be hired as durational employees until openings arise"). Because ordering defendants to hire plaintiffs into existing positions in the state workforce would not require either a new allocation of funds or the passage of new legislation, but would instead compel defendants to act only in their administrative capacities as executive branch officials with authority over the state workforce, we conclude that legislative immunity presents no obstacle to the District Court's ordering of any such relief.[13]

Nevertheless, we cannot assess, at the pleading stage, the merits of plaintiffs' argument that legislative immunity also presents no obstacle to their claims seeking reinstatement to their *previous positions.* Whether restoring plaintiffs to those positions would compel defendants to act in their legislative capacities will necessarily hinge on the findings made by the District Court regarding the issues to be resolved under *Bogan.* If defendants successfully demonstrate that their actions in terminating plaintiffs' positions were legislative in nature under *Bogan*, plaintiffs' claims for reinstatement to their previous positions would be barred by legislative immunity. This is so because ordering such relief would require no less than a judicial order compelling defendants, in their official capacities, to re-create positions that would have been eliminated through prior legislative action. As the Third Circuit has recognized in similar circumstances, granting such relief contravenes "the general

---

[13] Of course, defendants could still object to the practical availability of the "administrative" relief sought by plaintiffs. But such objections would speak not to the legislative nature *vel non* of the relief that would be granted, but instead to the doctrines governing judicial exercise of discretion when determining the extent and nature of injunctive relief that may be granted.

policies underlying legislative immunity." *See Baraka*, 481 F.3d at 203 (claims against the New Jersey Governor and State Assembly seeking reinstatement to position of Poet Laureate were barred because seeking reinstatement would "require . . . legislators to rescind their votes repealing the statute and to enact legislation recreating the position").

Moreover, unlike the injunction in *Consumers Union*, which prevented "enforcement" of unconstitutional provisions of the Virginia Bar Code, plaintiffs' projected relief would not merely enjoin defendants from performing discretionary functions or from exercising their "independent enforcement authority." *Consumers Union*, 446 U.S. at 734. Rather, it would compel the rescission of an existing budget agreement and the enactment of new budget legislation—precisely the activity which the legislative immunity privilege seeks to protect. *See Baraka*, 481 F.3d at 203 (concluding that because "[d]ebating, voting on, and passing statutes are role[s] assigned exclusively to the Legislature . . . [defendant's] request for reinstatement was barred by legislative immunity" (internal quotation marks omitted)). Because it is unclear whether and how defendants eliminated plaintiffs' positions, their entitlement to immunity from claims seeking reinstatement to their previous positions will depend on facts revealed during discovery.

In sum, we dismiss defendants' appeal for lack of jurisdiction insofar as it challenges the District Court's conclusion that defendants' entitlement to legislative immunity from plaintiffs' claims seeking reinstatement to their *previously-held positions* hinges on findings that can be made only following discovery. *See Almonte*, 478 F.3d at 105 (appellate jurisdiction does not exist where immunity determination depends on unresolved factual issues). However, because we conclude as a matter of law that legislative immunity presents no bar to plaintiffs' claims insofar as plaintiffs seek placement into *other, existing positions* in the State workforce, we affirm the District Court's denial of defendants' motion to dismiss this claim for relief and direct the Court, on remand, to consider this claim without

regard to defendants' asserted legislative immunity defense.[14]

**C. Eleventh Amendment Sovereign Immunity**

We turn now to defendants' argument that Eleventh Amendment sovereign immunity bars the instant action in its entirety, and that the District Court therefore erred by not dismissing plaintiffs' claims seeking injunctive relief.

### 1. Standard of Review and Governing Law

We review *de novo* the District Court's denial of defendants' motion to dismiss the amended complaint on Eleventh Amendment sovereign immunity grounds. *See Western Mohegan Tribe & Nation v. Orange County*, 395 F.3d 18, 20 (2d Cir. 2004).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The reach of the Eleventh Amendment has . . . been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns . . . ." *Western Mohegan*, 395 F.3d at 20. Under the well-known exception to this rule first set forth in *Ex parte Young*, 209 U.S. 123 (1908), however, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks omitted).

### 2. Analysis

Defendants assert that plaintiffs have failed to meet the requirement of *Ex parte Young* that they

---

[14] Because defendants do not assert that the other forms of injunctive relief sought by plaintiffs, including plaintiffs' request for an injunction prohibiting retaliation against them, would enjoin defendants in their legislative capacities, we do not consider whether legislative immunity might also bar these forms of relief. The parties are directed to address arguments concerning these other forms of relief to the District Court in the first instance.

allege an "*ongoing* violation of federal law." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2004) (emphasis added). Defendants maintain that the violations alleged here are not ongoing because (1) "since the adoption of a modified FY 2003 budget [several weeks after commencement of the instant litigation], [p]laintiffs' positions have not been available because they have not been funded," Appellants' Br. at 19; and (2) defendants do not have the power to recreate plaintiffs' previous positions without the authorization of the state legislature.

Plaintiffs claim that this Court lacks interlocutory appellate jurisdiction to consider defendants' sovereign immunity argument. They contend that defendants' argument is merely a claim of mootness disguised as a claim of entitlement to sovereign immunity and assert that a defendant should be deemed to have asserted a claim of mootness, rather than one of sovereign immunity, when, as here, the defendant has claimed that requested relief became unavailable *after* commencement of the litigation. Plaintiffs rely for support on two cases denying interlocutory review to government officials who were subjected to civil litigation—*Will v. Hallock*, 546 U.S. 345 (2006), which denied interlocutory review of a district court's order rejecting defendants' assertion of a statutory judgment bar, and *Bastien v. Office of Senator Ben Nighthorse Campbell*, 454 F.3d 1072 (10th Cir. 2006), which denied interlocutory review of a district court's order denying the motion of the defendant Senator's office to dismiss on sovereign immunity and other grounds.

Neither *Will* nor *Bastien* works in plaintiffs' favor. *Will* did not involve a claim of entitlement to sovereign immunity. Indeed, the Court in *Will* expressly distinguished that case from cases emerging in the sovereign immunity context where, as the Court recognized, interlocutory appeal is generally permissible. *See Will*, 546 U.S. at 350 (stating that orders denying Eleventh Amendment sovereign immunity were "among the small class of orders" appealable on a collateral basis).

Although *Bastien* involved a claim of entitlement to sovereign immunity, it did not require application of the *Ex parte Young* exception that is relevant to the instant appeal. We are specifically

32

required by *Ex parte Young* to examine whether there exists an *ongoing* violation of federal law. *See Verizon*, 535 U.S. at 645. Thus, it is relevant—in considering the existence *vel non* of an ongoing violation—to ask whether the claimed remedy is still available. Because defendants present a colorable argument that the purported elimination of plaintiffs' positions extinguished any ongoing violation of their right to state employment, we conclude that we retain jurisdiction over defendants' interlocutory appeal.[15] *Cf. Toussie v. Powell*, 323 F.3d 178, 182 (2d Cir. 2003) ("Because [the defendant] has, under our prior cases, a colorable claim to qualified immunity, we have jurisdiction to consider his claim, since otherwise that claim would be effectively lost") (internal quotation marks omitted).

Addressing the merits of defendants' sovereign immunity arguments, we find them to be unpersuasive. Every Circuit to have considered the issue, including our own, has held that claims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar. *See Dotson v. Griesa*, 398 F.3d 156, 178 (2d Cir. 2005); *Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir. 1985), *modified*, *reh'g denied*, 793 F.2d 457 (2d Cir. 1986); *see also Whalen v. Mass. Trial Ct.*, 397 F.3d 19, 30 (1st Cir. 2005); *Koslow v. Commonwealth of Pa.*, 302 F.3d 161, 179 (3d Cir. 2002); *Coakley v. Welch*, 877 F.2d 304, 307 n.2 (4th Cir. 1989); *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996); *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002); *Elliot v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986); *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 840-42 (9th Cir. 1997); *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232-33 (10th Cir. 2004); *Lassiter v. Ala. A&M Univ.*, 3 F.3d 1482, 1485 (11th Cir. 1993); *Dronenburg v. Zech*, 741 F.2d 1388, 1390 (D.C. Cir. 1984) (noting that claim by military officer against federal government seeking reinstatement was not barred by federal sovereign immunity).

---

[15] Because we also conclude below that defendants are not entitled to sovereign immunity from claims for injunctive relief as a matter of law, *see post*, we reject plaintiffs' additional argument against our exercise of interlocutory jurisdiction—namely, that resolution of the sovereign immunity issue hinges on unresolved factual determinations. *See* Appellees' Br. at 34-35.

Of these cases, only the First Circuit's decision in *Whalen* involved a claim seeking reinstatement to a position that no longer existed. *See Whalen*, 397 F.3d at 21. However, the court in *Whalen* had no occasion to address whether the elimination of the plaintiff's position was relevant to its holding because the position had been restored, and plaintiff had been reinstated to the position, while the suit was pending. *See id.* at 23. We therefore lack the benefit of any controlling or persuasive precedent that directly addresses whether the legislative elimination of a job position precludes a plaintiff's claim of an ongoing violation of federal law under *Ex parte Young.*

Assuming *arguendo* that plaintiffs' positions no longer exist, we conclude, as a matter of first impression, that the alleged violation of plaintiffs' rights is nevertheless "ongoing" for the purposes of the *Ex parte Young* exception. We reach this conclusion because, to the extent plaintiffs assert violations of their right to state employment, the elimination of their positions would do nothing to extinguish that right, much less the underlying violation. Rather, the elimination would merely extinguish the specific *positions* to which plaintiffs claim they are still entitled. Nothing prevents plaintiffs—either as a conceptual matter or under the doctrine of *Ex parte Young*—from claiming an "ongoing" harm based on the State's present, ongoing failure to re-create those positions in the State workforce, or to restore plaintiffs to other existing positions. Indeed, the state's alleged failure to act in that regard is, by its nature, both (1) ongoing and (2) potentially curable by prospective relief compelling the State to re-create positions or rehire plaintiffs into existing positions.[16] *Cf. Elliot*, 786 F.2d at 302 (holding that "wrongful discharge is a continuing violation" because "as long as the state official keeps [the plaintiff] out of his allegedly tenured position the official acts in what is claimed to be derogation of [the plaintiff's] constitutional rights").

*Green v. Mansour*, 474 U.S. 64 (1985), and *Papasan v. Allain*, 478 U.S. 265 (1986), relied on by defendants, are not to the contrary. In *Green*, the plaintiffs conceded that the only "continuing"

---

[16] Of course, we need not address here whether *legislative* immunity might bar the awarding of such relief.

34

violations that were alleged at trial—the state's failure to credit childcare costs and its inclusion of step-parents' income under a federal benefits program—had since been rendered moot both by Congressional legislation and by the state's subsequent conformity with federal law. 474 U.S. at 65-67. The only forms of relief considered by the Supreme Court in *Green* were "notice relief" (*i.e.*, the sending of notice to individuals who were potentially entitled to state benefits) and a declaratory judgment. *See id.* Such relief is not what plaintiffs seek here, or analogous to the relief sought here, because these plaintiffs *do* allege that there is an ongoing violation that could be immediately cured by granting their claims for reinstatement. *See Elliot*, 786 F.2d at 302 ("The goal of reinstatement . . . is to compel the state official to cease her actions in violation of federal law . . . .").

Nor is the relief sought here analogous to that which the Supreme Court, in *Papasan*, held was barred under the Eleventh Amendment. In that case, the Court held that a request to enjoin the state from withholding "accrued benefits" of a land trust sought retroactive, rather than prospective, relief and was therefore barred by the Eleventh Amendment. 478 U.S. at 280-81. The Court noted that although the relief sought would be paid in "continuing income," the relief amounted to "an accrued monetary liability" that would require the state "to use its own resources" in what the Court deemed a "one-time restoration of the lost [trust money] itself." *Id.* at 281.

Here, plaintiffs' requested relief of reinstatement to positions that might no longer exist can hardly be characterized as "retroactive" or as seeking "accrued benefits." To the contrary, the relief would be entirely forward-looking inasmuch as it would require the state prospectively to rehire plaintiffs into existing positions or create *new* positions in the State workforce, and to compensate plaintiffs for work performed in the course of their *future* employment. *See Doe*, 131 F.3d at 841 (relying on fact that plaintiff "would be entitled to [a] salary solely for his work after reinstatement" to conclude that relief of reinstatement was prospective in nature). Moreover, plaintiffs' injunctive claims do not seek compensation for past wrongs, and they would not appear to require the state to pay lost wages,

35

backpay, or retroactive benefits to plaintiffs. *See id.* (observing that "while reinstatement would relate to the past violation, it would not amount to relief *solely for the past violation*"). Rather, reinstatement, if granted, would serve directly to "end[ ] the [alleged] violation of federal law." *Papasan*, 478 U.S. at 278.[17]

Defendants also argue that plaintiffs' other claims for injunctive relief, including its claims for an injunction prohibiting retaliation against plaintiffs, are barred by Eleventh Amendment sovereign immunity as a matter of law. Defendants contend that the additional forms of injunctive relief requested by plaintiffs also do not respond to any ongoing violation of federal law. We disagree. Plaintiffs seek other forms of injunctive relief as a remedy for defendants' alleged ongoing retaliation against the individual and union plaintiffs, as demonstrated by defendants' alleged failure to rehire the individual plaintiffs (or restore their positions). The prohibition against retaliation sought by plaintiffs, for example, would prevent this alleged ongoing injury from occurring again in the future. Thus, sovereign immunity does not bar the other forms of injunctive relief sought by plaintiffs.

In sum, we conclude that the District Court properly denied defendants' motion to dismiss plaintiffs' claims for injunctive relief on sovereign immunity grounds.

### III. CONCLUSION

To summarize, we hold that:

> (1) Legislative immunity does not apply exclusively to bar claims for damages, but may
> also apply to bar claims for injunctive relief brought against state officials in their
> official capacities.

---

[17] Defendants' argument that plaintiffs' eighth claim for relief is barred under the Eleventh Amendment because it is based on an alleged violation of state law, in violation of *Pennhurst*, 465 U.S. at 89, is also without merit at this stage in the litigation. Assuming *arguendo* that we have jurisdiction to review this argument, we conclude that the eighth claim adequately alleges a violation of federally-protected rights.

(2) In determining whether the instant claims for injunctive relief are barred by legislative immunity, it is necessary to determine (a) whether defendants' actions were "substantively" and "procedurally" legislative; and (b) whether the specific relief sought would enjoin defendants in their performance of legislative functions.

(3) In the circumstances presented, discovery is necessary to assess whether defendants are entitled to legislative immunity with respect to plaintiffs' claims for reinstatement to their previous positions.

(4) As a matter of law, defendants are not entitled to legislative immunity with respect to plaintiffs' claims to placement into other, existing positions, because granting this relief would not enjoin defendants in their performance of legislative functions.

(5) Eleventh Amendment sovereign immunity does not bar plaintiffs' claims for injunctive relief.

Accordingly, we hereby **DISMISS** the appeal for lack of jurisdiction insofar as it challenges the District Court's denial of legislative immunity with respect to plaintiffs' claims seeking reinstatement to their previous positions. We **AFFIRM** the order of the District Court insofar as it denied legislative immunity with respect to plaintiffs' claims seeking placement into *other*, existing positions. We also **AFFIRM** the order of the District Court insofar as it held that plaintiffs' claims for injunctive relief were not barred by the Eleventh Amendment.