The WESTERN MOHEGAN TRIBE AND NATION, also known as Muhheakunnuk, Plaintiff–Appellant,

v.

ORANGE COUNTY, Rensselaer County, Albany County, Columbia County, Dutchess County, Rockland County, Westchester County, Sullivan County, Greene County, Defendants,

The State of New York and George Pataki, Defendants–Appellees.

Docket No. 04–0449–CV.

United States Court of Appeals, Second Circuit.

Argued: Dec. 15, 2004.

Decided: Dec. 23, 2004.

Robert L. Hirtle, Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, Connecticut (Robert N. Isseks, Alex Smith, Angelo R. Bisceglie, on the brief), for Plaintiff–Appellant.

Andrew D. Bing, Assistant Solicitor General, for Eliot Spitzer, Attorney General of the State of New York (Caitlin J. Halligan and Daniel Smirlock, on the brief), for Defendants–Appellees.

Before: MESKILL, CALABRESI, and WESLEY Circuit Judges.

PER CURIAM.

Plaintiff–Appellant the Western Mohegan Tribe and Nation ("the Western Mohegan Tribe" or "the Tribe") brought the instant action in the Southern District of New York (Brieant, *J.*) claiming that the Defendants–Appellees New York and its Governor, George Pataki ("defendants"), were, in violation of federal common law and the Indian Trade and Intercourse Act, 25 U.S.C. § 177, wrongly in possession of land contained in ten New York counties.[1] Defendants moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), arguing, among other things, that the action was barred by the Eleventh Amendment. The district court, in an unpublished opinion, granted the motion, reaching only the sovereign immunity issues raised by defendants. The instant appeal ensued.

---

1. The original complaint also named the ten counties as defendants. That complaint was dismissed voluntarily, and an amended complaint naming only the defendants who are before us on appeal was filed. References in this opinion to "the complaint" pertain to the amended complaint.

## I. Facts

According to the complaint, the Western Mohegan Tribe has lived, since New York's sixteenth-century Dutch colonial period, along the Hudson River and in an area extending from Lake Champlain to Long Island. Pursuant to its occupancy, the Tribe has exercised "tribal and aboriginal rights" over land that is now within Westchester, Sullivan, Greene, Columbia, Dutchess, Rockland, Putnam, Orange, Rensselaer, and Albany Counties in New York. The lands claimed by the Tribe include areas currently being used as state parks, state wildlife management areas, state-managed lakes and wetlands, state historic sites, and Empire State Plaza— where the state capitol is located.

In 1621, the Tribe signed a covenant of peace and friendship with the British. But, according to the complaint, following the British purchase of New York from the Dutch and the settlement of New York by British colonists, Western Mohegan tribal hunting grounds were confiscated and destroyed. In 1790 Congress passed the Indian Trade and Intercourse Act, 25 U.S.C. § 177, which reasserted exclusive federal jurisdiction over Indian land transactions. There apparently has been no treaty between the United States and the Western Mohegan Tribe extinguishing the Tribe's title to the above-described lands in New York. The amended complaint alleges that, consequently, the Tribe has been wrongfully dispossessed of its property by the actions of defendants, who have "claimed title to land that is not theirs, have used and occupied that land as public land, and have taken the revenues therefrom for their benefit."

The Tribe seeks "a declaration of plaintiff's ownership and right to possess their reservation lands in the State of New York, which lands are subject to restrictions against alienation under federal law. It also seeks relief restoring to them the possession of their lands."

## II. Discussion

We review *de novo* a district court's decision to grant a motion to dismiss, accepting the factual allegations contained in the complaint as true, and drawing all inferences in favor of the plaintiff. *See Mason v. Am. Tobacco Co.,* 346 F.3d 36, 39 (2d Cir.2003); *DeMuria v. Hawkes,* 328 F.3d 704, 706 (2d Cir.2003).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The reach of the Eleventh Amendment has, of course, been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns, in federal court. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Principality of Monaco v. Mississippi,* 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934). And, on the theory that such entities are analogous to foreign sovereigns, it has also been interpreted to prohibit suits against states brought by Native American tribes. *See Blatchford v. Native Vill. of Noatak,* 501 U.S. 775, 782, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991).

██ Defendants' contention that the immunity from suit in federal court enjoyed by the State of New York requires dismissal of this action is thus a threshold matter which we must address. The Tribe argues primarily that a suit may be brought against the Governor in his official capacity, pursuant to the exception to Eleventh Amendment immunity developed

in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).[2]

■ The doctrine of *Ex parte Young* is a limited exception to the general principle of sovereign immunity. It "allows a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law." *CSX Transp., Inc. v. New York State Office of Real Prop. Servs.,* 306 F.3d 87, 98 (2d Cir.2002) (internal quotation marks and alteration omitted); *see also Arthur v. Nyquist,* 573 F.2d 134, 138 (2d Cir.1978). We have, echoing the Supreme Court, stated that in determining whether the *Ex parte Young* doctrine applies to avoid an Eleventh Amendment bar to suit, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *CSX Transp.,* 306 F.3d at 98 (quoting *Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland,* 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)). Accordingly, the Tribe argues that since it has alleged ongoing violations of federal law by virtue of the State's claims to certain contested lands, and since it seeks only prospective injunctive relief to cure those violations, this case falls squarely within the *Ex parte Young* exception.

The applicability of *Ex parte Young* to tribal claims virtually identical to those at issue in the case before us was, however, considered by the Supreme Court in *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). In that case the Court held that, notwithstanding *Ex parte Young,* the Elev-

enth Amendment barred suit by an Indian tribe seeking prospective injunctive relief against state officials, where the suit sought a declaration of the tribe's entitlement to the exclusive use, occupancy, and right to quiet enjoyment of certain lands claimed by the State of Idaho. The property in question in *Coeur d'Alene* was, primarily, the submerged lands and bed of Lake Coeur d'Alene and various navigable rivers and streams that comprised the lake's water system. The respondent tribe requested:

> a declaratory judgment to establish its entitlement to the exclusive use and occupancy and the right to quiet enjoyment of the submerged lands as well as a declaration of the invalidity of all Idaho statutes, ordinances, regulations, customs, or usages which purport to regulate, authorize, use, or affect in any way the submerged lands. . . . [and] a preliminary and permanent injunction prohibiting defendants from regulating, permitting, or taking any action in violation of the Tribe's rights of exclusive use and occupancy, quiet enjoyment, and other ownership interest in the submerged lands . . . .

521 U.S. at 265, 117 S.Ct. 2028.

■ A majority of the Court rejected the applicability of *Ex parte Young* in the specific circumstances presented by the claim brought by the Coeur d'Alene Tribe. The Court determined that the Coeur d'Alene Tribe's suit sought "in effect, a determination that the lands in question are not even within the regulatory jurisdiction of the State," which declaration would "bar the State's principal officers from exercis-

2. The Tribe's contention that the Eleventh Amendment does not bar this action even as against the State of New York because the complaint seeks to claim not "real estate title" but rather "Indian title" need not detain us. Since *Blatchford,* it has been clear that states are protected from defending in federal court against actions brought by Indian tribes, just as they are protected from being hailed into federal court by foreign sovereigns—regardless of the relief sought.

ing their governmental powers and authority over the disputed lands and waters." *Id.* at 282, 117 S.Ct. 2028. This, the Court concluded, was "the functional equivalent of a quiet title action," *id.* at 281 117 S.Ct. 2028, and hence, "[u]nder the[ ] particular and special circumstances" presented by the case, the Court "f[ou]nd the *Young* exception inapplicable." *Id.* at 287, 117 S.Ct. 2028.[3]

Although five members of the Court agreed that the Eleventh Amendment barred the Coeur d'Alene Tribe's claims, the majority was split on the framework for applying *Ex parte Young*. In the portions of the majority opinion that were joined only by Chief Justice Rehnquist, Justice Kennedy wrote that the Tribe's invocation of *Ex parte Young* must be assessed by way of "a careful balancing and accommodation of state interests," consistent with what he described as a "case-by-case approach to the *Young* doctrine [that] has been evident from the start." *Id.* at 278–80, 117 S.Ct. 2028. Justice O'Connor's concurrence, joined by Justices Scalia and Thomas, rejected the majority opinion's suggestion that the applicability of *Ex parte Young* to a given claim may be determined only on the basis of "case-by case balancing approach." *Id.* at 293, 117 S.Ct. 2028 (O'Connor, *J.,* concurring). In any event, the concurring justices agreed that where, as they believed was the case in *Coeur d'Alene,* "a

plaintiff seeks to divest the State of all regulatory power over submerged lands—in effect, to invoke a federal court's jurisdiction to quiet title to sovereign lands—it simply cannot be said that the suit is not a suit against the State." *Id.* at 296, 117 S.Ct. 2028.

■ The Tribe urges us to conclude, however, that its claims are of a more limited nature than those considered by the *Coeur d'Alene* Court. The Tribe states that it seeks only "Indian title," which it describes as the right "to camp, to hunt, to fish, [and] to use the waters and timbers" in the contested lands and waterways. But the Tribe also describes Indian title as the right "to *exclude all others,* including holders of fee simple title, through state law possessory actions such as ejectment and trespass." This description of the concept of Indian, or aboriginal, title is consistent with the law of this Circuit:

> Under the so-called Doctrine of Discovery, long recognized by the Supreme Court, the discovering nations held fee title to Indian land, subject to the Indians' right of occupancy and use. This distinction between fee title and the Indians' right of occupancy and use, sometimes called Indian title or aboriginal title, gave rise to a corresponding distinction between the rights to affect fee title and Indian title. The right to ex-

---

**3.** Apparently significant to the Court's reasoning was the fact that the Coeur d'Alene Tribe's claims implicated the authority of the State of Idaho over submerged lands, described by the Court as possessing "a unique status in the law and infused with a public trust the State itself is bound to respect.... [L]ands underlying navigable waters have historically been considered 'sovereign lands.' State ownership of them has been 'considered an essential attribute of sovereignty.'" *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 283, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *see also*

*id.* at 289, 117 S.Ct. 2028 (O'Connor, *J.,* concurring) (noting that the Tribe sought to eliminate the State's regulatory power over submerged lands).

Although the complaint is not specific in this regard, we take judicial notice of the fact that the state parks listed as comprising portions of the Tribe's land claim contain "submerged lands," including bodies of water contained within Neversink River State Unique Area, Harriman State Park, Lake Taghkonic State Park, and the Tivoli Bays State Wildlife Management Area.

tinguish Indian title ... was held by the sovereign .... Since the adoption of the Constitution, there has been broad agreement that the right of extinguishment belongs to the national government.

*Oneida Indian Nation of New York v. State of New York,* 860 F.2d 1145, 1150 (2d Cir.1988) (internal citations omitted); *see also County of Oneida v. Oneida Indian Nation of New York State,* 470 U.S. 226, 234–35, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985).

While, in other contexts, we have declined to extend *Coeur d'Alene*'s holding, *see, e.g., Barcia v. Sitkin,* 367 F.3d 87, 102 (2d Cir.2004); *Connecticut v. Cahill,* 217 F.3d 93, 101–02, 104 (2d Cir.2000), we have not had occasion to consider a case raising the core issues of land, state regulatory authority, and sovereignty expressly examined by the *Coeur d'Alene* Court. We believe this to be such a case.

It is clear from the Tribe's assertions in the complaint and on appeal, and from our prior statements regarding Indian title, that the Tribe's claim is fundamentally inconsistent with the State of New York's exercise of fee title over the contested areas. To the extent that the complaint alleges that there has never been a lawful extinguishment of the Tribe's Indian title, it seeks a declaration from this court that New York's exercise of fee title remains "subject to" the Tribe's rights, *i.e.,* a "de-

termination that the lands in question are not even within the regulatory jurisdiction of the State." *Coeur d'Alene,* 521 U.S. at 282, 117 S.Ct. 2028. Thus, the relief requested by the Tribe is, as much as that sought in *Coeur d'Alene,* the functional equivalent of quiet the Tribe's claim to title in the New York counties named in the complaint. *Id.* at 281, 117 S.Ct. 2028; *see also id.* at 289, 117 S.Ct. 2028 (O'Connor, J., concurring). As such, the action is squarely governed by *Coeur d'Alene,* regardless of whether one undertakes the *Ex parte Young* analysis advocated by the majority opinion, or instead adopts the categorical approach enunciated in the plurality opinion.[4]

While we express no opinion on the *limits* of *Coeur d'Alene*'s applicability, we are bound to follow the case where, as here, it directly controls. *Cf. Perez v. Greiner,* 296 F.3d 123, 125 n. 4 (2d Cir.2002).

Because we conclude that the Tribe's action is barred by the Eleventh Amendment, we do not reach the other bases for dismissal argued by defendants on appeal.

## III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

**4.** In light of the above conclusion, we find unavailing the Tribe's argument that it may bring its claims against the Governor under *Ex parte Young,* based on the logic of *Agua Caliente Band of Cahuilla Indians v. Hardin,* 223 F.3d 1041, 1045–49 (9th Cir.2000), *cert. denied* 532 U.S. 958, 121 S.Ct. 1485, 149 L.Ed.2d 373 (2001). The Ninth Circuit in *Agua Caliente* declined to follow *Coeur d'Alene* and applied the *Ex parte Young* doctrine to a tribal suit seeking a declaratory judgment that application of California's sales and use purchases made by non-Indians at hotels located

on reservation land violated federal law. The court declined to "read *Coeur d'Alene* to bar all claims that affect state powers, or even important state sovereignty interests," deciding instead that "it was the unique divestiture of the state's broad range of controls over its own lands that made the *Young* exception to sovereign immunity inapplicable." *Id.* at 1048. *Agua Caliente* is not persuasive here, because the Western Mohegan Tribe's claims seek the virtually identical "unique divestiture of the state's broad range of controls over its own lands" that was at issue in *Coeur d'Alene.*