21-616-cv
*Silva v. Farrish*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

———————

AUGUST TERM 2021
No. 21-0616

DAVID T. SILVA, GERROD T. SMITH, JONATHAN K. SMITH,
MEMBERS OF THE SHINNECOCK INDIAN NATION,
*Plaintiffs-Appellants*,

v.

BRIAN FARRISH, JAMIE GREENWOOD, EVAN LACZI, NEW YORK STATE
DEPARTMENT OF ENVIRONMENTAL CONSERVATION, SUFFOLK
COUNTY DISTRICT ATTORNEY'S OFFICE, BASSIL SEGGOS,
*Defendants-Appellees*.

———————

On Appeal from the United States District Court
for the Eastern District of New York

———————

ARGUED: MARCH 15, 2022
DECIDED: AUGUST 25, 2022

———————

Before:     JACOBS, WESLEY, and MENASHI, *Circuit Judges*.

Plaintiffs-Appellants Gerrod Smith, Jonathan Smith, and David
Silva are members of the Shinnecock Indian Nation and assert an
ancestral right to fish in the Shinnecock Bay without interference.

Over the past decade, however, state officials have ticketed and prosecuted them for violating state fishing laws. The plaintiffs sought declaratory and injunctive relief to prevent the further enforcement of those fishing regulations as well as damages based on allegations of discrimination in past enforcement. The district court granted summary judgment to the defendants. We hold that *Ex parte Young* applies to the plaintiffs' fishing-rights claims against the New York State Department of Environmental Conservation ("DEC") officials—but not against the DEC itself—because the plaintiffs allege an ongoing violation of federal law and seek prospective relief against state officials. We also hold that the plaintiffs have Article III standing to seek prospective relief and that *Younger* abstention no longer bars Silva from seeking prospective relief because his criminal proceedings have ended. We therefore conclude that the district court erred in granting summary judgment to the DEC officials on the plaintiffs' claims for declaratory and injunctive relief. The district court properly granted summary judgment on the discrimination claims because there is no evidence in the record that would permit an inference of discriminatory intent. We affirm in part and vacate in part the judgment of the district court and remand for further proceedings.

SCOTT M. MOORE, Moore International Law PLLC, *for Plaintiffs-Appellants*.

ARI SAVITZKY, Assistant Solicitor General (Letitia James, Attorney General, Barbara D. Underwood, Solicitor General, Steven C. Wu, Deputy Solicitor General, *on the brief*), *for Defendants-Appellees New York State Department*

*of Environmental Conservation, Brian Farrish, Evan Laczi, and Basil Seggos*.

BRIAN C. MITCHELL, Assistant County Attorney (Dennis M. Cohen, Suffolk County Attorney, *on the brief*), *for Defendants-Appellees Suffolk County District Attorney's Office and Jamie Greenwood*.

MENASHI, *Circuit Judge*:

Plaintiffs-Appellants Gerrod Smith, Jonathan Smith, and David Silva are members of the Shinnecock Indian Nation and reside on the Shinnecock Reservation. They believe that when the Shinnecock ceded land to colonial settlers, the tribe retained the aboriginal right to fish in the Shinnecock Bay without interference and that the Supremacy Clause protects this right from state laws that would abridge it. [1] Over the past decade, however, state officials have ticketed and prosecuted the plaintiffs for violating state laws that regulate fishing in the Shinnecock Bay. Seeking to clarify their fishing rights, the plaintiffs filed this action in the U.S. District Court for the Eastern District of New York against the New York State Department of Environmental Conservation ("DEC"), [2] several DEC officials in

---

[1] *See* App'x 38 ("The colonial documents … in which the Shinnecock ceded land and negotiated retained fishing rights are legally enforceable today under state and federal law."); App'x 41 ("The aboriginal right to fish in un-relinquished aboriginal territory and the related retained right to fish in ceded territory is a protected federal right under the Supremacy Clause.").

[2] State law empowers the DEC to manage the "fish and wildlife resources" of the state, including the habitats of fish and wildlife. N.Y. Environmental Conservation Law § 11-0303(1).

their official and personal capacities,[3] the Suffolk County District Attorney's Office, and Assistant District Attorney Brian Greenwood.[4]

The complaint alleged that the enforcement of state fishing regulations against the plaintiffs in the Shinnecock Bay violates their fishing rights. It also alleged that the defendants' prior enforcement of state fishing regulations amounted to intentional discrimination in violation of 42 U.S.C. §§ 1981 and 1982. The plaintiffs sought declaratory and injunctive relief to prevent the further enforcement of state fishing regulations against them. The plaintiffs sought monetary damages from the individual defendants based on the allegations of discrimination.

The district court granted summary judgment to the DEC defendants. The district court concluded that state sovereign immunity barred all the claims against the DEC—as well as those against the DEC officials in their official capacities—and that the *Ex parte Young* exception to state sovereign immunity did not apply. The district court additionally held that the plaintiffs lacked standing to bring their claims for declaratory and injunctive relief and that *Younger* abstention precluded consideration of Silva's claims for prospective relief. The district court further held that the plaintiffs'

---

[3] The DEC officials include DEC Conservation Officers Brian Farrish and Evan Laczi and DEC Commissioner Basil Seggos.

[4] On appeal, the plaintiffs do not raise any arguments regarding the district court's grant of summary judgment to the Suffolk County District Attorney's Office and Assistant District Attorney Brian Greenwood. Those arguments are therefore waived, *see Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006), and we affirm the judgment of the district court insofar as it granted summary judgment to those defendants.

discrimination claims were either time-barred or failed to allege a prima facie case of discrimination.

We hold that *Ex parte Young* applies to the plaintiffs' fishing-rights claims against the DEC officials—but not against the DEC itself—because the plaintiffs allege an ongoing violation of federal law and seek prospective relief against state officials. We also hold that the plaintiffs have Article III standing to seek prospective relief and that *Younger* abstention no longer bars Silva from seeking prospective relief because his criminal proceedings have ended. We therefore conclude that the district court erred in granting summary judgment to the DEC officials on the plaintiffs' claims for declaratory and injunctive relief. As for the plaintiffs' discrimination claims, we conclude that the district court properly granted summary judgment to the defendants because there is no evidence in the record that would permit an inference of discriminatory intent. Accordingly, we affirm in part and vacate in part the judgment of the district court. The case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

### I

The plaintiffs are members of the Shinnecock Indian Nation, a federally recognized Indian tribe, and reside on the Shinnecock Reservation. The plaintiffs believe that, based on certain colonial-era deeds, they have the right to fish in the Shinnecock Bay without interference and that the Supremacy Clause protects that right from state abridgment. Over the past decade, however, the state has ticketed and prosecuted the plaintiffs for violating state laws that regulate fishing in the Shinnecock Bay.

5

Gerrod Smith was prosecuted in October 2008 for possessing eighteen out-of-season and undersized summer flounder, sixteen out-of-season and undersized porgy, and two undersized blackfish harvested from the Shinnecock Bay in violation of state law. Around the same time, Jonathan Smith received a civil infraction ticket and a criminal summons for operating an "unpermitted aquaculture facility" in the Shinnecock Bay in violation of New York Environmental Conservation Law § 13-0316(2) and for using "improper shellfish tags" in violation of § 13-0319. The cases against Gerrod Smith and Jonathan Smith were ultimately dismissed. In 2017, Silva was charged with fishing without a license as well as unlawful possession of underage eels and possession of eels over the limit. *See* N.Y. Environmental Conservation Law § 13-0355(3); (fishing without a license); 6 N.Y.C.R.R. § 40.1(b)(1)(ii) (undersized eels); *id.* § 40.1(b)(1)(iii) (eels over the limit).

While Silva's criminal prosecution was pending in state court, the plaintiffs filed this action in the U.S. District Court for the Eastern District of New York. The complaint alleged that certain colonial-era deeds establish the plaintiffs' "right to fish in the waters of Shinnecock Bay and its estuary," App'x 16, and that the application of state fishing regulations to the plaintiffs violates those fishing rights. The complaint also alleged that the defendants' prior enforcement of state fishing regulations amounted to a "continuing pattern and practice of purposeful acts of discrimination based on their race as Native Americans" in violation of 42 U.S.C. §§ 1981 and 1982. App'x 21.

The plaintiffs sought a declaration of their fishing rights and an injunction preventing the defendants from continuing the criminal prosecution against Silva and from otherwise interfering with the plaintiffs' "use of the waters, fishing, taking fish, and holding fish and

shellfish in Shinnecock Bay and its estuary and other usual and customary Shinnecock fishing waters." App'x 22. The plaintiffs sought monetary damages based on the allegations of discrimination.

The plaintiffs moved for a preliminary injunction, and the district court denied their motion. *Silva v. Farrish*, No. 18-CV-3648S, 2018 WL 8967113, at *4 (E.D.N.Y. July 31, 2018). The district court concluded that Silva failed to show a likelihood of success on the merits and that even if he had, abstention was required under *Younger*. *Id.* The district court further held that the Smiths lacked standing because their injuries were "entirely speculative and remote." *Id.* at *5.

## II

The defendants moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The district court referred the motions to a magistrate judge, who recommended dismissing the plaintiffs' complaint in its entirety. *Silva v. Farrish*, No. 18-CV-3648S, 2019 WL 117602 (E.D.N.Y. Jan. 7, 2019). The magistrate judge held that state sovereign immunity barred the claims against the DEC and its officials in their official capacities. *Id.* at *9-12. In so holding, the magistrate judge rejected the plaintiffs' argument that *Ex parte Young* authorized their claims for prospective relief. *Id.* at *9-12. The magistrate judge concluded—as alternative bases for dismissal—that the plaintiffs lacked standing to seek prospective relief, *id.* at *15 & n.19, and that *Younger* abstention precluded consideration of Silva's claims for prospective relief, *id.* at *14. The magistrate judge further held that the plaintiffs'

7

discrimination claims against the DEC officials in their individual capacities failed to state a claim. *Id.* at *16.[5]

The district court neither adopted nor rejected the magistrate judge's recommendation but terminated the dismissal motions and set a briefing schedule for summary judgment motions. The district court then referred the summary judgment motions to the magistrate judge for another report and recommendation. The magistrate judge recommended granting summary judgment to the defendants on the claims for declaratory and injunctive relief for the same reasons that were provided in the first report and recommendation. *Silva v. Farrish*, No. 18-CV-3648, 2020 WL 3451344 (E.D.N.Y. May 27, 2020), *report and recommendation adopted*, No. 18-CV-3648, 2021 WL 613092 (E.D.N.Y. Feb. 17, 2021). As for the plaintiffs' claims of racial discrimination, the magistrate judge concluded that the Smiths' claims were time-barred, *id.* at *11, and that Silva did not make out a prima facie case of discrimination, *id.* at *12.

The district court adopted the report and recommendation "in its entirety" and granted summary judgment to the defendants. *Silva v. Farrish*, No. 18-CV-3648, 2021 WL 613092 (E.D.N.Y. Feb. 17, 2021). In their objection to the report and recommendation, the plaintiffs disclosed that Silva had "abandoned" his state-court criminal appeal and argued that *Younger* abstention no longer barred Silva's claims. The district court rejected this argument, concluding that Silva's

---

[5] The magistrate judge recommended dismissing the plaintiffs' claims against the Suffolk County District Attorney's Office and Assistant District Attorney Brian Greenwood on the grounds that the District Attorney's Office is not an entity susceptible to suit and that Greenwood was entitled to absolute prosecutorial immunity. *Silva*, 2020 WL 3451344, at *19.

abandonment of his state-court appeal did "not equate to exhausting … state appellate remedies" so *Younger* still applied. *Id.* at *2 (internal quotation marks omitted).

The plaintiffs timely appealed.

## DISCUSSION

### I

We begin with the district court's grant of summary judgment on the plaintiffs' claims for declaratory and injunctive relief. We hold that the *Ex parte Young* exception to state sovereign immunity applies to these claims against the DEC officials, that the plaintiffs have Article III standing to pursue prospective relief, and that *Younger* abstention does not bar Silva's claims for prospective relief. Accordingly, the district court erred in granting summary judgment to the DEC officials.

### A

States are generally "immune from suit" under "the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021). That doctrine recognizes that the states "entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). Here, the plaintiffs do not contest that the DEC and its officials are part of the state and enjoy sovereign immunity from suit. Instead, the plaintiffs invoke *Ex parte Young*, 209 U.S. 123 (1908), which provides a "a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's*

*Health*, 142 S. Ct. at 532. *Ex parte Young*, however, has no application to the DEC itself. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (explaining that *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought"). We therefore consider the plaintiffs' argument as it relates to the DEC officials.

To determine whether *Ex parte Young* applies to a complaint, we conduct a "straightforward inquiry" into whether the complaint (1) "alleges an ongoing violation of federal law" and (2) "seeks relief properly characterized as prospective." *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see also Dairy Mart Convenience Stores, Inc. v. Nickel*, 411 F.3d 367, 372 (2d Cir. 2005). There is no doubt that the plaintiffs' suit satisfies both prongs. The plaintiffs allege that the enforcement of state fishing regulations violates their federally protected fishing rights. Their requested relief—that the DEC officials be enjoined from enforcing the state fishing regulations against them—would prospectively end the alleged violation. Based on this analysis, *Ex parte Young* applies.

The DEC defendants argue that the Supreme Court's decision in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), and our decision in *Western Mohegan Tribe & Nation v. Orange County*, 395 F.3d 18 (2d Cir. 2004), foreclose the application of *Ex parte Young* in this case. We disagree. In *Coeur d'Alene*, the Supreme Court said that if the effect of the requested relief is "the functional equivalent of quiet title" to land, then the suit has effectively been brought against the state and is barred by state sovereign immunity. 521 U.S. at 282. The suit cannot proceed if it asserts an "entitlement to the exclusive use and occupancy and the right to quiet enjoyment of … lands." *Id.* at 265. In other words, the suit is effectively one against the state when

"substantially all benefits of ownership and control would shift from the State to the Tribe." *Id.* at 282.

In *Coeur d'Alene*, the tribe requested a declaratory judgment not only to declare invalid any laws "purport[ing] to regulate, authorize, use, or affect in any way the submerged lands" but also to prohibit the state from taking "action in violation of the Tribe's rights of exclusive use and occupancy, quiet enjoyment, and other ownership interest in the submerged lands." *Id.* at 265.[6] In *Western Mohegan*, the tribe sought a declaration that it held "Indian title," which it described as the right "to camp, to hunt, to fish, and to use the waters and timbers" as well as the right "to *exclude all others,* including holders of fee simple title, through state law possessory actions such as ejectment and trespass." 395 F.3d at 22 (alteration omitted).

The plaintiffs here seek a declaration that the law grants them a right to fish in the Shinnecock Bay without interference and that the DEC officials are unlawfully denying them that right. Unlike the tribes in *Coeur d'Alene* and *Western Mohegan*, the plaintiffs' request for relief in this case would not transfer ownership and control of the Shinnecock Bay from the state to an Indian tribe. Nor would it allow the plaintiffs to prevent others from fishing in the Shinnecock Bay. It

---

[6] *See also Stewart*, 563 U.S. at 257 (explaining that *Coeur d'Alene* "refused to allow an Indian Tribe to use *Ex parte Young* to obtain injunctive and declaratory relief establishing its exclusive right to the use and enjoyment of certain submerged lands in Idaho and the invalidity of all state statutes and regulations governing that land").

would merely resolve the plaintiffs' individual claims that they have their own right to fish there.[7]

A decision of the Sixth Circuit is instructive. In *Hamilton v. Myers*, 281 F.3d 520 (6th Cir. 2002), the court was asked to determine whether the plaintiffs could "seek a judicial declaration of, and an injunction protecting, their alleged exclusive riparian rights over Doherty land grants submerged under [a] Lake." *Id.* at 527. The court observed that "[u]nlike the Tribe in *Coeur d'Alene*, the Hamiltons are not seeking to divest sovereign ownership of [the] Lake from the state, or seeking entitlement to the exclusive use and occupancy of the lake. Nor are the Hamiltons seeking to invalidate the regulatory authority of the [state] agencies" over the lake. *Id.* at 528. If "the Hamiltons prevail at trial," the court explained, the "Lake will remain within the sovereign control of the State … and will continue to be subject to [the state's] regulatory authority. At most …, the State … will be required to tailor its regulatory scheme to respect the [plaintiffs'] constitutionally protected riparian rights." *Id.* The court held that *Coeur d'Alene* did not "extend" to that case. *Id.* So too here. If the plaintiffs succeed in obtaining their requested relief, at most the state would need to tailor its regulatory scheme to respect the plaintiffs' fishing rights. That is a "typical *Young* action," which seeks to "bring the State's regulatory scheme into compliance with federal law." *Coeur d'Alene*, 521 U.S. at 289 (O'Connor, J., concurring in part and

---

[7] The DEC defendants argue that the plaintiffs "have at various points … suggested that ownership of all or part of the Shinnecock Bay is itself 'contested,' or that all or part of the Bay is under Shinnecock 'jurisdiction.'" DEC Defendants' Br. 37. Whatever the plaintiffs may have suggested about the status of the Shinnecock Bay, the relief they seek in this case is not a "right to *exclude all others*." *Western Mohegan*, 395 F.3d at 22.

12

concurring in the judgment). The requested relief would not divest the state of its ownership of the submerged land or the waters, which means this suit is not effectively one against the state.

We hold that the plaintiffs' claims seeking prospective relief against the DEC officials fall within the *Ex parte Young* exception to state sovereign immunity and accordingly may proceed.

**B**

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., art. III, § 2. The doctrine of standing applies the case-or-controversy requirement by "identify[ing] those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016).

An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Those claiming a "risk of future harm" may seek "forward-looking, injunctive relief to prevent the harm from occurring" but only if "the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021); *see also Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021).

When a plaintiff seeks relief from a threatened criminal prosecution, the Supreme Court has instructed that imminence does "not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007). Rather, an imminent injury is apparent when the plaintiff has alleged (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) "a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).[8] In other words, "a plaintiff has standing to make a preenforcement challenge 'when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative.'" *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979)).

In this case, the DEC defendants initially raised the issue of standing in their motion to dismiss and did so again in their motion for summary judgment, arguing in both motions that the plaintiffs'

---

[8] "The Supreme Court has not limited standing to pursue pre-enforcement challenges only to plaintiffs intending conduct arguably affected with a constitutional interest." *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 n.4 (2d Cir. 2015). In *Cayuga Nation v. Tanner*, for example, the plaintiffs alleged that a federal statute preempted the "application of a local anti-gambling ordinance" to the plaintiffs' gaming facility. 824 F.3d 321, 323 (2d Cir. 2016). Applying the *Driehaus* standard, we held that the plaintiffs had standing to bring a pre-enforcement challenge because they "alleged that they intend to conduct bingo games, which is clearly prohibited by the Ordinance, and the Village has announced its intention to enforce the Ordinance against" the plaintiffs. *Id.* at 331.

alleged injury was insufficiently imminent.[9] Because "standing was challenged largely on the basis of the pleadings," we "accept as true all material allegations of the complaint, and … construe the complaint in favor of the complaining party." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 109 (1979); *Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1106-07 (2d Cir. 1992) (stating in the context of a motion for summary judgment that the "court is constrained" when ruling on standing to "accept as true all material allegations of the complaint, and [to] construe the complaint in favor of the complaining party"). "[A]long with the allegations made in the complaint," we consider "other facts and circumstances as may be evident from the record." *Sullivan*, 962 F.2d at 1107; *see also Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993) ("[C]ourt[s] must look at the substance of the allegations to determine jurisdiction.").

The plaintiffs have shown that the threat of enforcement of the state fishing laws amounts to an injury in fact.[10] First, the plaintiffs allege "an intention to engage in a course of conduct" arguably protected by federal law but proscribed by state law. *Babbitt*, 442 U.S. at 298. The plaintiffs previously fished in the Shinnecock Bay in violation of the state fishing regulations, and according to their complaint they are "deterred and chilled" from doing so again because they fear prosecution. App'x 18. The plaintiffs thereby

---

[9] *See* Motion to Dismiss at 7-9, *Silva*, No. 8-CV-3648, ECF No. 56-3; Motion for Summary Judgment at 8-9, *Silva*, No. 8-CV-3648, ECF No. 84-4.

[10] Judge Wesley would conclude that only Silva has established an injury in fact because the Smiths' criminal proceedings were resolved in 2009 and 2010 and the Smiths do not allege a regular course of conduct. In his view, the following analysis applies only to Silva rather than all three plaintiffs.

explain that they would fish if they did not fear prosecution. We have said that "specificity" in such plans is not "essential to standing" when the plaintiffs "have already been subjected to enforcement actions." *Knife Rts.*, 802 F.3d at 386 n.5. Given the plaintiffs' history of fishing in the Shinnecock Bay and their prosecutions for that conduct, their allegation is sufficient to show their intent to fish there again.

Second, the plaintiffs have alleged a "credible threat" of future enforcement of the state fishing regulations. *Babbitt*, 442 U.S. at 298. Each plaintiff has already been subject to fines and enforcement proceedings for violating the fishing regulations, and "past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical." *Driehaus*, 573 U.S. at 164 (internal quotation marks omitted). The state has not foresworn enforcement of the fishing regulations, and "courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Cayuga Nation*, 824 F.3d at 331-32 (internal quotation marks omitted). "Where, as here, there is reason to believe that the plaintiffs will be targets of criminal prosecution, and there has been no disavowal of an intention to prosecute those individuals, the plaintiffs have adequately alleged a credible threat of prosecution." *Id.* at 331-32. Under these circumstances, the plaintiffs' "professed fear of prosecution is hardly conjectural or hypothetical." *Knife Rts.*, 802 F.3d at 385.

The DEC defendants argue that a party "cannot rely on past injury to satisfy the injury requirement" but "must show a likelihood that he … will be injured in the future." DEC Defendants' Br. 45-46 (quoting *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004), and citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). But the plaintiffs have shown such a likelihood by alleging both an intention

16

to fish and a credible threat of prosecution if they do. The cases on which the DEC defendants rely involved circumstances in which a past injury was unlikely to recur. In *Lyons*, the plaintiff sought declaratory and injunctive relief because he claimed that he had been illegally choked by Los Angeles police officers. 461 U.S. at 98. The plaintiff alleged that the Los Angeles police routinely applied chokeholds and that he faced a threat of being illegally subjected to such treatment in the future. *See id.* at 105-06. The Supreme Court decided that the plaintiff lacked standing to challenge the alleged policy because he failed to identify an imminent threat that he would again be stopped and mistreated by the police; he expressed no intent to violate the law, and he could not establish that arresting police officers would necessarily apply a chokehold in a future encounter. *See id*. It was speculative that the plaintiff would again be stopped by police officers who decided to employ a chokehold. Similarly, in *Shain*, we held that the plaintiff was unable "to establish a sufficient likelihood of a future unconstitutional strip search" because the possibility that he would again be subjected to such a search relied on an "accumulation of inferences" that were "simply too speculative and conjectural." 356 F.3d at 216.

The plaintiffs in this case do not rely on such speculation. The state has promulgated its fishing regulations and does not dispute that it would apply those regulations to the plaintiffs should they fish again without complying. "[N]owhere in the record" have the defendants "disavowed that they would criminally charge [the plaintiffs] again in the same circumstances." *Knife Rts.*, 802 F.3d at 386-87; *see also Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010) (recognizing a threat as imminent because the government had "not

17

argued ... that plaintiffs will not be prosecuted if they do what they say they wish to do").

The plaintiffs seek to fish in the Shinnecock Bay without complying with state fishing regulations. We do not see a basis in the record for dismissing their claims on the ground that they do not intend to fish or that the state does not intend to enforce its regulations. We hold that the plaintiffs have shown an injury in fact for standing to pursue declaratory and injunctive relief.

## C

Last, we address whether *Younger* abstention bars consideration of Silva's claims for injunctive relief. Silva pursued two different claims for injunctive relief. The first would "enjoin[] the Defendants from enforcing the laws of the State of New York against Plaintiff Silva in Southampton Town Justice Court in Case No. 17-7008." App'x 22. The second would "enjoin[] the Defendants from … interfering with Plaintiffs' use of the waters, fishing, taking fish, and holding fish and shellfish in Shinnecock Bay and its estuary and other usual and customary Shinnecock fishing waters." App'x 22. Although there was an ongoing state prosecution when Silva filed his federal complaint, that proceeding has now ended. Silva's first claim—and the *Younger* issue associated with it—is therefore moot. Silva may proceed on his second claim for injunctive relief.

We faced a similar situation in *Pathways, Inc. v. Dunne*, 329 F.3d 108 (2d Cir. 2003). In that case, "the lawsuits and litigation efforts initiated by [the defendants] against [the plaintiff] in the state courts … concluded." *Id.* at 114. We decided that the plaintiff's claims for injunctive relief that implicated "state cases pending when the District Court ruled" were "now moot because those cases are

concluded." *Id.* But, like Silva's claims, the plaintiff's claims included "a prospective component: [the plaintiff] sought to prevent suits that [the defendants] might file in the future, or other obstructive activity in which they might engage." *Id.* Those forward-looking claims were not barred because "*Younger* is not a bar to federal court action when state judicial proceedings have not themselves commenced." *Id.* (quoting *Hawaii Hous. Authority v. Midkiff*, 467 U.S. 229, 238-39 (1984)).[11]

Because there is no dispute that Silva's prosecution has ended, we regard his request to enjoin that prosecution as moot. But *Younger* abstention does not affect his other claim for injunctive relief.[12]

---

[11] Presented with a similar situation, the Tenth Circuit "vacate[d] the district court's order dismissing [the plaintiff's] claims on *Younger* grounds and remand[ed] these claims for further consideration." *Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 395 (10th Cir. 2016); *see also Bass v. Butler*, 258 F.3d 176, 179 (3d Cir. 2001); *Davis v. Rendell*, 659 F.2d 374, 376 (3d Cir. 1981); *Wood v. Several Unknown Metro. Police Officers*, 835 F.2d 340, 341-42 (D.C. Cir. 1987).

[12] The DEC defendants argue that *Younger* abstention requires dismissal of Silva's claim for injunctive relief because he did not "exhaust[] his state court appellate remedies." DEC Defendants' Br. 42. To be sure, Silva may not forgo appealing an adverse state-court judgment to pursue a collateral attack on that judgment in federal court. In *Huffman v. Pursue, Ltd.*, for example, the plaintiff did not appeal a state-court judgment issued against him and instead sought to enjoin the execution of that judgment in federal court. 420 U.S. 592, 599 (1975). The Supreme Court said that the plaintiff "must exhaust his state appellate remedies before seeking relief" in federal court. *Id.* at 608. Here, by contrast, Silva's second claim for relief does not collaterally attack his criminal conviction but instead seeks prospectively to prevent the defendants from interfering with his alleged right to fish.

## II

As for the plaintiffs' discrimination claims, we conclude that the district court properly granted summary judgment to the defendants because there is no evidence in the record that would permit an inference of discriminatory intent.

Section 1981 provides that "all persons have equal right to make and enforce contracts," and § 1982 "establishes that all persons have equal right to purchase, lease, sell, hold, and convey real and personal property." *Costello v. Town of Huntington*, No. 14-CV-2061, 2015 WL 1396448, at *12 (E.D.N.Y. Mar. 25, 2015) (citing 42 U.S.C. §§ 1981, 1982). To state a prima facie claim under either provision, plaintiffs must prove: "(1) they are members of a racial minority; (2) an intent to discriminate on the basis of their race by defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

The second element of the claim—an intent to discriminate—is the focus of this appeal. To survive summary judgment, the plaintiffs needed to produce enough evidence for a reasonable jury to find that the defendants intentionally discriminated against the plaintiffs based on race. *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) ("For purposes of summary judgment, the operative question under Section 1981 … is whether the employee produced sufficient evidence for a reasonable jury to find that … the employer intentionally discriminated against the employee on the basis of race.") (internal quotation marks omitted). The plaintiffs did not provide evidence from which a rational trier of fact could find racially

discriminatory intent. The record shows that the DEC officials cited the three plaintiffs for violating race-neutral, generally applicable fishing regulations in state waters. There is no evidence that the DEC officials did or said anything that would indicate racial animus. Nor is there evidence that they treated non-Indians more favorably than the plaintiffs.

The plaintiffs point to an email that, they argue, establishes "illegal racial profiling of Shinnecock people of the Native American race." Appellants' Br. 22. The email, dated March 28, 2017, and sent from DEC Captain Dallas Bengel to a large group of DEC employees (including Laczi and Farrish), explained that "[w]ord is out that the Shinnecocks are actively seeking a shipper for glass eels" and noted that the DEC "will have to work the off-reservation areas diligently to prevent illegal harvest." App'x 420. The plaintiffs argue that the email reflects racial animus because it identifies the "Shinnecocks." But "Shinnecocks" is not a slur; it describes the tribe and its members. The email does not instruct DEC officials to harass or to profile tribe members; it directs them to work "diligently to prevent [an] illegal harvest" of glass eels—a nondiscriminatory law-enforcement objective.

Without evidence of racial animus, the plaintiffs' discrimination claims cannot survive summary judgment. We affirm the judgment of the district court insofar as it granted of summary judgment on these claims.

## CONCLUSION

The district court erred in granting summary judgment to the DEC officials on the plaintiffs' claims for declaratory and injunctive relief with respect to their fishing rights. The district court properly

21

granted summary judgment to the DEC itself on those claims and to all the defendants on the discrimination claims. Accordingly, we affirm in part and vacate in part the judgment of the district court. The case is remanded for further proceedings consistent with this opinion.